### PETER M. LAURITSEN v. AMERICAN BRIDGE COMPANY.[1]

December 5, 1902.

Nos. 13,146—(171).

Movable Scaffold.

> Where the owner of a movable scaffold erected for its employees in a building of a third party permits the same to be used by others, such owner may not actively interfere with or change its structural conditions so as to endanger the safety of one who is thus permitted to occupy it.

Same—Duty of Owner to Licensee.

> The duty imposed upon the owner of such structure to a person permitted and licensed to use the same is properly defined as ordinary care, and should be commensurate with the risks of the situation, or such care as persons of ordinary prudence would exercise to others under the same or similar circumstances.

Evidence—Negligence.

> Evidence in this case considered, and held that it was a question of fact for the jury whether an owner of a scaffold, permitting employees of another to use the same for their own necessary and convenient purposes, had been guilty of negligence in loosening the ropes by means of which it was suspended, whereby a licensee thereon fell, and was injured.

Action in the district court for Hennepin county to recover $1,875 for personal injuries. The case was tried before McGee, J., and a jury, which rendered a verdict in favor of plaintiff for $1,066. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Clapp & Macartney*, for appellant.

The employees of the Electric Steel Elevator Company, while

1 Reported in 92 N. W. 475.

using the platforms of defendant, were mere licensees toward whom defendant and its servants owed no duty, except to refrain from doing or continuing to do any act which would necessarily result in injury to them. In other words, to refrain from wilful or wanton negligence. Mathews v. Bensel, 51 N. J. L. 30; Ligenfelter v. Baltimore, 154 Ind. 49; Pittsburgh v. Bingham, 29 Oh. St. 364; Akers v. Chicago, St. P., M. & O. Ry. Co., 58 Minn. 540; Pettit v. Great Northern Ry. Co., 58 Minn. 120; De Blois v. Great Northern Ry. Co., 71 Minn. 45. Where there is no duty to exercise ordinary care, defendant is liable for wanton negligence only. Lando v. Chicago, St. P., M. & O. Ry. Co., 81 Minn. 279. Such negligence defined: Sloniker v. Great Northern Ry. Co., 76 Minn. 306; Russell v. Minneapolis St. Ry. Co., 83 Minn. 304. There is no claim that there was any wilful or wanton negligence. The mere fact that the end of the stringer fell is all the evidence of negligence there is in the case, unless it was negligence for Anderson to manipulate the rope at all while plaintiff was standing on the staging, if he was in fact standing on the staging. Certainly the mere fact that the end of the stringer fell is not sufficient, especially where, as in the case at bar, there was no contractual relation between plaintiff and defendant. Cosulich v. Standard, 122 N. Y. 118; Walker v. Chicago, R. I. & Pac. Ry. Co., 71 Iowa, 658; Huff v. Austin, 46 Oh. St. 386; Brunner v. Blaisdell, 170 Pa. St. 25; Kletschka v. Minneapolis & St. L. R. Co., 80 Minn. 238. If it was negligence for Anderson to try to raise the platform with plaintiff on the plank at the other end, it must have been equally negligent for plaintiff to remain on the plank while Anderson was untying the rope. Carroll v. Minnesota Valley R. Co., 13 Minn. 18 (30).

*James D. Shearer*, for respondent.

LOVELY, J.

Plaintiff was employed by the Electric Steel Elevator Company during the fall of 1901 to assist in the "installation" of the operating machinery of an elevator which it was then constructing in Minneapolis. He was injured by a fall from a movable scaffold maintained in the building by the servants of the American Bridge Company, defendant, who were engaged under a contract with the

electric company to execute the structural work. Plaintiff recovered a verdict. Defendant asked for judgment, or for a new trial in the alternative, which motion was denied. From this order the case is brought to this court on appeal.

Evidence relevant to the issues tends to support the following facts: Previous to September 28, 1901, defendant had been engaged for some time on the structural steel work of the new elevator, and had not finished on December 5. During the intermediate period plaintiff and other millwrights were engaged for the electric company in "installing" or setting up and perfecting the machinery to be used in operating the elevator. The millwrights were employed by the electric company, while the mechanics engaged in the structural work were under the control of defendant; each set of workmen being under the orders of a superintendent. The contrivance occasioning plaintiff's injury was a scaffolding of two 4x6 inch timbers suspended eighteen feet above the floor, and sustained by ropes. These ropes were attached to overhead standards, and tied under the timbers, which were sixteen feet in length, running north and south parallel to each other, and fourteen feet apart. Across these timbers a single plank a foot in width, sixteen feet long, and three inches thick was loosely placed, and could be moved as occasion required. It was intended for the servants of defendant as a standing place while engaged on the steel work overhead.

While this temporary scaffold was put up and maintained in this way by the bridge company for its own employees, it appears that for two months before the accident the employees of the electric company found it convenient to occupy it occasionally, without interference or objection from defendant, whose foreman was in charge of the structural work during that time; and the evidence very strongly leads to the conclusion that in the "installation" work such use was required, and that either this scaffold or an appliance of a similar character would have had to be placed in the same position by the millwrights if they could not make use of the supports and plank thus maintained by defendant. It must also be stated that the servants of both companies were properly engaged in their respective employments within the building at the time. During the afternoon of December 5 plaintiff had occasion to step

upon the plank to do some work on the mill machinery, and while standing there, so occupied, defendant's foreman and two of its employees undertook to raise the scaffolding. While attempting to do this, one of them (Anderson) untied the rope which sustained the timber at the southeast corner, intending to raise it, but the rope inadvertently slipped through his hands, the timber dropped, the plank resting thereon careened and fell, precipitating plaintiff upon the floor eighteen feet below, whereby he sustained the injuries for which he recovered the verdict.

At the trial plaintiff testified that when he fell he was standing upon the plank; that he had received no warning of the intention of defendant's servants to interfere with the scaffolding. On the other hand, servants of defendant stated that immediately before plaintiff fell they gave him explicit warning that they were going to raise the timbers, at which time he was not upon the plank; that, after having lifted the timber on the corresponding side of the platform, but at an inopportune moment, he stepped on the plank, and fell, as the rope slipped through Anderson's hands. The conflict in the evidence in these material respects was sharply defined, and presented a clean-cut issue of fact for the jury, which has been determined by the verdict, and there is nothing so inherently improbable in either narrative as to justify our interference with the result on that account. If the facts as stated by plaintiff sustain the verdict, it must stand, unless defendant's rights have been prejudiced by erroneous instructions or orders of the court below.

After describing the facts involved with commendable perspicuity, the learned trial court in its charge told the jury that it was the duty of Anderson, under the circumstances as they existed, to exercise ordinary care for the safety of the plaintiff in moving the platform, and that the test of such care should be what an ordinarily careful and prudent man engaged in work of this kind under the same or similar circumstances would have done. This instruction is objected to, and upon defendant's claim involves the principal legal question raised by its assignments upon the theory that the employees of the Electric Steel Elevator Company, while using the platforms, were mere licensees, towards whom the defendant

and its servants owed no duty but to refrain from doing any act which would necessarily result in injury to them, which was no more than to refrain from wilful and wanton acts of negligence.

There is little of practical benefit in adopting abstract terms in instructions to juries upon the relative obligations of individuals to concrete duties. This is very much the case in attempting to apply the refined distinctions of the civil law discriminating between ordinary care and slight care in issues of negligence. Such subtleties tend to obscure, rather than illuminate, the practical questions to be determined, and are usually avoided by the courts of this country. So, too, it is somewhat difficult to define negligence accurately, and no definition has been adopted that is perfectly satisfactory to all writers on the subject. The one most frequently approved is that of Baron Alderson in Blyth v. Birmingham, 11 Exch. 781, and is as follows:

"The omission to do something which a reasonable man, guided upon those considerations which ordinarily regulate the conduct of human affairs, would do, or doing something which a prudent and reasonable man would not do." And an action may be brought if thereby mischief is caused to a third party, not intentionally. Mr. Pollock adds to this definition the explanatory clause: "Provided, of course, that the party whose conduct is in question is already in a situation that brings him under the duty of taking care." Pollock, Torts, 355.

These definitions are often adopted by modern courts, and would, we have no doubt, be sustained against objection. Yet these definitions have been criticised by acute legal analysts, and courts often qualify further by saying that in all cases of injury from alleged absence of care, where an obligation of duty is imposed, the care should depend on some recognized duty, and be commensurate with the risks and dangers of the situation, or state, as did the court here, that such care was such as an ordinarily prudent man would exercise under the same or similar circumstances, which seems to be as far as abstract definitions or illustration ought to go, for, "What is more than these cometh of evil," and at least are not useful, but liable to mislead.

It follows that the instructions of the trial court in this respect

were sufficiently accurate, whether the plaintiff had a direct invitation to go upon the platform or was a mere licensee; for, ordinary care is the measure of duty owing to a mere licensee under such circumstances (Clarkin v. Biwabik-Bessemer Co., 65 Minn. 483, 67 N. W. 1020). In Schreiner v. Great Northern Ry. Co., 86 Minn. 245, 90 N. W. 400, we said that while "the licensee or visitor must take care of himself in using the premises as he finds them, and is not entitled to be protected from existing conditions upon the property in their ordinary state, * * * he has the right to complain of a wilful act by defendant in running him down, or of traps and pitfalls, which would be an allurement to unknown dangers which would show a want of ordinary care." If there is any care due a licensee, before revocation of the license, less than ordinary care, it has never been recognized in this court, where the comparative degrees of negligence are ignored as misleading abstractions.

But corollary to this contention of defendant, it is further urged that the evidence is not sufficient to sustain the verdict, because it does not appear that defendant's servants had actual knowledge that plaintiff was upon the platform at the time the rope was untied. If positive knowledge that he was there was necessary, the affirmative duty to look for plaintiff could not be predicated upon his previous use of the scaffold as a licensee; or, if the servants of defendant had a right to adjust and change these platforms at their pleasure, in disregard of plaintiff's rights, counsel's position would be tenable, and the duty of defendant would depend entirely upon actual knowledge of plaintiff's danger, known to its servants, rather than upon the existence of facts, as here, to indicate that he might be on the platform at the time it was changed, or that would justify the supposition that interference therewith would jeopardize his safety. And this suggests the crucial inquiry what were plaintiff's legal rights at the time. Defendant concedes he was a licensee, but his actual rights, rather than an abstract definition, are important. Nowhere is this more significant than in the relation between the person permitted to use the premises or structures of another and the owner, for the obligations of duty in such cases are variant under different circumstances, and that

which would be a proper act by the owner in one case would be negligence in another. Kay v. Pennsylvania, 65 Pa. St. 269.

The evidence is undisputed that plaintiff and other servants of the electric company found it convenient to use this scaffold to do their necessary work, and that the services of both sets of employees were within the apparent contemplation of their respective employers and being concurrently performed at the time of the accident. It was apparently more to the advantage of defendant that the servants of the electric company should use the scaffold than that they take it down from time to time, as occasion for use required, and put up its own appliances in place thereof for a like purpose. Hence the nature and character of the use of this structure in these respects is of more consequence than the length of time it had been used to establish the measure of care and duty involved, and would seemingly require a higher consideration for the plaintiff than would be due to a mere trespasser. Expressed in the plainest terms possible, the owner of premises or structures who permits another to use them under such conditions should not actively interfere with such use, so as to endanger the safety of the occupant. If the test of prudence among ordinary men is to be the criterion in such cases,—and we know of no other,—this restriction would seem to be clear, and to admit of no doubt.

A very instructive opinion of the supreme court of Wisconsin is that of Davis v. Chicago, 58 Wis. 646, 17 N. W. 406. In this case it appeared that a person using a footpath over the railroad right of way with the acquiescence of defendant was injured by the explosion of a steam boiler, likewise operated by the company, and it was held that such permissive use required the exercise of active care to avoid an injury to the licensee. While the ultimate result in this case has been to some extent criticised, yet in all of the many cases in England and America cited therein not open to doubt it is either held or conceded that a permissive use of premises or structures by the owner imposes upon him an affirmative duty to avoid any dangerous intermeddling therewith that imperiled the safety of the person permitted to enjoy such use. We should be surprised to find this rule denied in any enlightened tribunal. It has been fully recognized under essential restrictions upon licensees

in the following decisions of this court: Akers v. Chicago, St. P., M. & O. Ry. Co., 58 Minn. 540, 60 N. W. 669; Emery v. Minneapolis Ind. Exp., 56 Minn. 460, 57 N. W. 1132; Clarkin v. Biwabik-Bessemer Co.,. supra; De Blois v. Great Northern Ry. Co., 71 Minn. 45, 73 N. W. 637; Schreiner v. Great Northern Ry. Co., supra.

Whether the proper degree of care required of defendant under the circumstances disclosed by the evidence that its servants make observation of the platform before interfering with it, to discover whether the servants of the electric company were using the same,. and give warning if they were, or to refrain from untying the rope until the person thereon had removed, it is not within our province to decide. This was a question for the jury. But we do not hesitate to say that something more was demanded than the obligations due to a mere trespasser or intruder, as required in the case of Lando v. Chicago, St. P., M. & O. Ry. Co., 81 Minn. 279, 83 N. W. 1089, cited by defendant, and we are not able, from the careful scrutiny which we have given the evidence, as well as the charge of the trial court, on this review, to discover that the defendant was deprived of any substantial right either in sending the case to the jury or in the instructions to the jury.

From the conclusion we have reached that the plaintiff might obtain a right to use the scaffolds erected by defendant for its own servants in the performance of his work as a millwright by the permissive acts of defendant, it follows that testimony to show his continued use thereof for two months previous to the accident, during which time defendant recognized the privileges of the servants of the electric company in that respect, was competent, and properly received.

It was urged that the same evidence which tends to show that defendant's servant Anderson was negligent in untying the rope convicted plaintiff of contributing to his own injury by remaining upon the scaffold instead of stepping from it at a time when it was interfered with. We do not think this follows absolutely. There would be indubitable force in this argument if we were bound to accept as conclusive the statement in behalf of defendant that while plaintiff was upon the platform defendant's servants had raised it, and continued to change its position, with his knowl-

edge; but it is to be remembered that plaintiff disputes any information of such intermeddling previous to the direct act of Anderson in loosening the rope, and it does not follow, because plaintiff did not observe what Anderson was doing, that he was negligent as a matter of law. He may have been so absorbed in his own work that he was diverted from watching for dangers he need not anticipate while acting upon the reasonable presumption that servants of the other company would not be guilty of any affirmative act to endanger his safety. Neither is there force to the distinction urged upon the claim that it was the purpose of Anderson in unloosening the timber which supported the plank to raise it, rather than to let it fall. The negligence consisted in doing an act the result of which might, in the relation between cause and effect, result in its fall. Ransier v. Minneapolis & St. L. Ry. Co., 32 Minn. 331, 20 N. W. 332.

Order affirmed.