# STATE v. WILLIAM E. BOLSINGER.[1]

January 11, 1946.

No. 34,043.

[1]Reported in 21 N. W. (2d) 480.

*Gallagher & Madden,* for appellant.

*J. A. A. Burnquist,* Attorney General, *Ralph A. Stone,* Assistant Attorney General, *Mary P. Walbran,* Acting County Attorney, and *Samuel Lord,* Assistant County Attorney, for the State.

PETERSON, JUSTICE.

Defendant was convicted of criminal negligence in the operation of a vehicle resulting in death, under Minn. St. 1941, § 169.11

(Mason St. 1940 Supp. § 2720-175), which so far as here pertinent reads:

"Any person who by operating or driving a vehicle of any kind in a reckless or grossly negligent manner causes a human being to be killed, under circumstances not constituting murder in the first, second, or third degree, or manslaughter in the first or second degree, is guilty of criminal negligence in the operation of a vehicle resulting in death,"

and appeals.

The state's claim is that on the evening of March 19, 1944, by operating or driving his automobile on a public highway in a reckless and grossly negligent manner, defendant killed his wife, who at the time was walking thereon. The information alleges that defendant "in a reckless *and* grossly negligent manner" (italics supplied) drove his automobile into and against his wife and inflicted injuries from which she died. It is in the language of the statute, except that it uses the conjunctive "and" instead of the disjunctive "or." The state's evidence tends to show that defendant was intoxicated as a consequence of drinking beer and whiskey at numerous times throughout the day; that he was in an ugly mood, which he manifested by quarrels with his wife and threats toward her; that, knowing that she was walking on the highway, he drove his automobile to overtake her; and that, although she was in plain sight ahead of him on the highway, he drove at excessive speed under the circumstances, failed to observe her, and hit her with great force and violence with the automobile. The evidence will be set forth in detail in the discussion of defendant's contention that the evidence is not sufficient to sustain a conviction.

Defendant's claim is that the statute is unconstitutional for the reason that the language thereof to the effect that causing death of another by operation of a vehicle "in a reckless or grossly negligent manner" does not prescribe reasonably ascertainable standards of guilt; that the information in the language of the statute is insufficient for the reason that it is so indefinite that it does not

inform defendant with reasonable certainty of the charge against him; that it was error to deny certain requested instructions relating to the meaning of the words "reckless" and "grossly negligent"; that it was error to instruct the jury it might convict if it found, as the statute provides, that defendant caused decedent's death by driving the vehicle either in a reckless *or* grossly negligent manner rather than, as the information alleged, that he drove it in both a reckless *and* grossly negligent manner; and that the evidence fails to sustain a conviction even if the state's theory of the law be adopted.

■ In order to apply § 169.11 (§ 2720-175), we must first determine what it means. Here, as in other cases involving the meaning of a statute, the problem is one of construction. The killing of a human being, in cases not constituting murder or manslaughter in any of their degrees, by operating a vehicle in a manner that is either "reckless" or "grossly negligent," is declared by the statute to be the separate crime of "criminal negligence in the operation of a vehicle resulting in death." Since no questions of murder or manslaughter are involved here, the only question is what is meant by the words "reckless" and "grossly negligent" as used in the statute.

The meaning of the word "reckless," so far as it relates to driving, is found in § 169.13 (§ 2720-177), which defines "reckless" driving as driving "in such a manner as to indicate either a wilful or wanton disregard for the safety of persons or property." That means conscious and intentional driving which the driver knows, or should know, creates an unreasonable risk of harm to others. Restatement, Torts, § 500. By this is not meant that the driver must be personally conscious of his wrongdoing; it is sufficient that he ought to realize the fact. As said in *comment c:*

"In order that the actor's conduct may be reckless, it is not necessary that he himself recognize it as being extremely dangerous. His inability to realize the danger may be due to his own reckless temperament or to the abnormally favorable results of previous conduct of the same sort. It is enough that he knows or has reason

to know of circumstances which would bring home to the realization of the ordinary, reasonable man the highly dangerous character of his conduct."

Intentional conduct, but not intentional harm, is meant. In Commonwealth v. Welansky, 316 Mass. 383, 396, 398, 55 N. E. (2d) 902, 909, 910, where a conviction of "involuntary manslaughter through wanton or reckless conduct" by reckless disregard of the safety of the patrons of a night club in the event of fire was sustained, there is an elaborate consideration of the question. The court said: "What must be intended is the conduct, not the resulting harm." Restatement, Torts, § 500, *comment f*, says:

"Reckless misconduct differs from intentional wrongdoing in a very important particular. While an act to be reckless must be intended by the actor, the actor does not intend to cause the harm which results from it. It is enough that he realizes or, from facts which he knows, should realize that there is a strong probability that harm may result, even though he hopes or even expects that his conduct will prove harmless. However, a strong probability is a different thing from the substantial certainty without which he cannot be said to intend the harm in which his act results."

In short, in order to constitute the crime in question by reckless driving, the accused must have known, or should have known, that his manner of driving the vehicle created an unreasonable risk of harm, but he need not have intended to cause harm.

"Gross negligence" was defined in High v. Supreme Lodge, 214 Minn. 164, 170, 7 N. W. (2d) 675, 679, 144 A. L. R. 810, as meaning negligence in a very high degree, or great or excessive negligence. This definition and one of defendant's requested instructions defining the words "gross negligence," based on the authority of Morris v. Erskine, 124 Neb. 754, 248 N. W. 96, are practically verbatim. It has been said that "gross negligence" is "very great negligence, or the want of even scant care. It has been described as a failure to exercise even that care which a careless person would use. * * * So far as it has any accepted meaning, it is

merely an extreme departure from the ordinary standard of care."
Prosser, Torts, p. 260.

"Gross negligence" is a term commonly used where degrees of
negligence are recognized. The Massachusetts court is the leading
exponent of the doctrine. Because of that fact, its decisions carry
great weight. Thornhill v. Thornhill, 172 Va. 553, 2 S. E. (2d)
318; Shaw v. Moore, 104 Vt. 529, 162 A. 373, 86 A. L. R. 1139.
In the leading case of Altman v. Aronson, 231 Mass. 588, 591, 121
N. E. 505, 506, 4 A. L. R. 1185, where "gross negligence" is defined
as very great negligence or absence of even slight care, but as not
equivalent to wanton and wilful wrong, the court said:

"Gross negligence is substantially and appreciably higher in
magnitude than ordinary negligence. It is materially more want
of care than constitutes simple inadvertence. It is an act or omis-
sion respecting legal duty of an aggravated character as distin-
guished from a mere failure to exercise ordinary care. It is very
great negligence, or the absence of slight diligence, or the want of
even scant care. It amounts to indifference to present legal duty,
and to utter forgetfulness of legal obligations so far as other per-
sons may be affected. It is a heedless and palpable violation of
legal duty respecting the rights of others. The element of culpabil-
ity which characterizes all negligence is in gross negligence magni-
fied to a high degree as compared with that present in ordinary
negligence. Gross negligence is a manifestly smaller amount of
watchfulness and circumspection than the circumstances require
of a person of ordinary prudence. But it is something less than the
wilful, wanton, and reckless conduct which renders a defendant
who has injured another liable to the latter even though guilty
of contributory negligence, or which renders a defendant in right-
ful possession of real estate liable to a trespasser whom he has
injured. It falls short of being such reckless disregard of probable
consequences as is equivalent to a wilful and intentional wrong.
Ordinary and gross negligence differ in degree of inattention, while
both differ in kind from wilful and intentional conduct which is,
or ought to be, known to have a tendency to injure."

It is something between ordinary negligence and reckless·conduct. Learned v. Hawthorne, 269 Mass. 554, 169 N. E. 557.

The difference between "recklessness" and "gross negligence" was pointed out in Prondecka v. Turners Falls P. & E. Co. 238 Mass. 239, 242, 130 N. E. 386, 387, where the court said:

"It is now settled that negligence and wanton, wilful, or reckless conduct are not equivalents. In the recent case of Cotter v. Boston, Revere Beach & Lynn Railroad, 237 Mass. 68, 129 N. E. 426, it was decided that 'Under our decisions * * * the difference between negligence, whether ordinary or gross, and conduct which is wilful, wanton, in reckless disregard of the rights of others, is a difference in kind and not merely one of degree. "In the first case the wrongdoer is guilty of nothing worse than carelessness. In the last he is guilty of a wilful, intentional wrong. His conduct is criminal or *quasi* criminal. If it results in the death of the injured person, he is guilty of manslaughter." Aiken v. Holyoke Street Railway, 184 Mass. 269, 271, 68 N. E. 238, 239. Altman v. Aronson, 231 Mass. 588, 121 N. E. 505, 4 A. L. R. 1185.' "

Reckless conduct is treated as separate from negligence. What was said in Commonwealth v. Pentz, 247 Mass. 500, 509, 143 N. E. 322, 325, concerning the offense of reckless driving, applies here, *viz.:*

"The statute according to its plain words makes the act of operating a motor vehicle on a way 'so that the lives or safety of the public might be endangered' a criminal offence. It is that act which is penalized. The intent with which the act is done is an immaterial factor. It is irrelevant whether the act is negligent, or not. Although it may be difficult·to conceive of the operation of a motor vehicle on a way so as to endanger the lives or safety of the public which does not at the same time involve some element of negligence, nevertheless, the statute says nothing about negligence."

Absent tokens· of a different legislative intention, the statutory mandate of § 645.08(1), (Mason St. 1944 Supp. § 10933-9[1]), is that words in a statute should be construed according to their ap-

proved and recognized meaning. Where, in addition to the absence of tokens of a different meaning, a legislative intention is evinced that words are used with their approved and recognized meaning, no departure from such meaning is permissible. This is such a case. The legislative intent was to use the words "reckless" and "grossly negligent" with their approved and recognized meanings as we have defined them.

A legislative intention so to use the words "reckless" and "grossly negligent" is apparent when the statute is viewed against the backdrop of the statutes relating to the same subject matter of homicide in force at the time of its enactment. The same general legislative intention and pattern run through them all. The old statutes grade homicides by degrees according to the legislative conception of their atrociousness and depravity measured by such considerations as premeditation, intention, depravity of mind, regardlessness of human life, culpable negligence, gross neglect, negligence, and other specific wrongdoing. Punishments vary with the degrees—the evident purpose is to fit the punishment to the crime. At the top of the scheme are premeditated and intentional killings constituting murder in the first and second degrees. §§ 619.07-619.08 (§ 10067-Mason St. 1941 Supp. § 10068). Death caused by engaging in a duel is specifically made the crime of murder in second degree. Murder in the third degree includes the unintentional killing of a human being either in certain cases while engaged in committing or attempting to commit a felony or when perpetrated "by act eminently dangerous to others, and evincing a depraved mind, regardless of human life." § 619.10 (§ 10070). Selling intoxicating liquor which when drunk causes death is a specific instance of murder in third degree. § 340.69 (§§ 10071, 3237). Homicides not constituting murder in the first, second, and third degrees are manslaughter. § 619.13 (§ 10073). It includes all cases of homicide committed without intention to effect death other than murder in the third degree. In the statutes defining manslaughter, we find use of the terms "reckless," "culpable negligence," "gross neglect," "negligence," and others. The word "reck-

less" appears in § 619.20 (§ 10080), covering cases of death caused by "reckless act" not specified by or coming within the provisions of any other statute, and in § 619.23 (§ 10083), relating to cases of death caused by "reckless" operation of steamboats and engines. The statutes run the entire gamut of negligence in all its degrees. *Culpable negligence* heads the list in § 619.18(3), (§ 10078, subd. 3), relating to homicide caused by act of "culpable negligence," and is followed by *gross negligence* in § 619.23 (§ 10083), relating to causing death by "gross neglect" in the operation of steamboats and engines, and then by *ordinary negligence* in § 619.20 (§ 10080) in cases of negligent use of machinery. Specific cases of homicide by wrongdoing regardless of negligence are declared to be manslaughter in the second degree by § 619.22 (§ 10082), relating to causing death by overloading passenger vessels, and by § 619.25 (§ 10085), relating to unlawfully keeping gunpowder or explosives in a city or village.

The statute in question and those relating to homicide in force at the time of its enactment relate to one common subject matter, that of homicide. As such, they should be construed as constituting one systematic body of law. Each statute should be construed in the light of, with reference to, and in connection with the others. So construed, the statute in question should be fitted to the statutes in force at the time of its enactment and carried into effect conformably to them. The distinctions made in different statutes as manifested by the difference of terminology used should be observed. Where a statute uses words with discrimination, it evinces an intention that the accepted technical meaning should be given them. In People v. Pociask, 14 Cal. (2d) 679, 683, 96 P. (2d) 788, 791, the court construed the word "negligence" in a similar statute to mean *"ordinary negligence"* because it was used in contradistinction to the words "due caution and circumspection," the words used in the statute relating to manslaughter. We cannot disregard the different degrees of negligence mentioned in the several statutes without judicially obliterating distinctions made by the legislature. In State v. Shepard, 171 Minn. 414, 214 N. W. 280,

and State v. Weltz, 155 Minn. 143, 193 N. W. 42, on the one hand, and in State v. Kline, 168 Minn. 263, 209 N. W. 881, on the other, we observed the distinction between murder in the third degree by causing death of a human being by driving an automobile under circumstances "eminently dangerous to others, and evincing a depraved mind, regardless of human life," and manslaughter in the second degree by causing the death of a human being by driving an autotmobile in a *culpably negligent* manner. All were cases of drunken driving.

In State v. Lester, 127 Minn. 282, 149 N. W. 297, L. R. A. 1915D, 201, we held that "culpable negligence" means "gross negligence" with an implication of recklessness. The difference between "culpable negligence" and "gross negligence" is that, while both are very high degrees of negligence, the former involves the idea of recklessness and the latter does not. The statute makes either gross negligence or recklessness, separately and not in combination, as in culpable negligence, the wrongdoing, which is punishable, where it consists of driving which causes the death of a human being. Our definition of "culpable negligence" is in accord with that given in the leading case of People v. Angelo, 246 N. Y. 451, 456, 457, 159 N. E. 394, 396, where the question is exhaustively treated. The court said:

" 'Culpable' negligence is therefore something more than the slight negligence necessary to support a civil action for damages. It means, disregard of the consequences which may ensue from the act, and indifference to the rights of others. No clearer definition, applicable to the hundreds of varying circumstances that may arise, can be given. Under a given state of facts, whether negligence is culpable is a question of judgment. Ordinarily for the judgment of the jury, as is the question whether negligence exists at all," and,

"* * * It would seem clear, therefore, that the Legislature used the word in the same sense as it had been used for centuries—as the equivalent of 'criminal,' 'reckless,' 'gross,' such negligence as it is worthy of punishment."

Thus, it appears that the statute in question, so far at least as it makes driving in a "grossly negligent" manner the basis of criminality, adopts a lower degree of negligence than "culpable negligence" in the statute relating to manslaughter in the second degree. While the statute declares that only cases not constituting murder or manslaughter shall constitute the crime of negligence in the operation of a vehicle resulting in death, and thus adopts a degree of recklessness that does not constitute the crimes mentioned, it is difficult to conceive of a case where there might not be some overlapping of the statutes in this respect. But that fact is no objection to the statute in question. Other states have enacted statutes creating the same or a similar crime.

The New York statute provides that causing the death of a human being by driving a vehicle of any kind "in a reckless or culpably negligent manner" shall constitute the crime of criminal negligence in the operation of a vehicle resulting in death; but, unlike our statute, it contains no provision that it shall apply where the killing occurs under circumstances not constituting murder or manslaughter. In the New York statute, the expression "culpably negligent" is used where ours uses the words "grossly negligent." The California statute considered in People v. Pociask, 14 Cal. (2d) 683, 96 P. (2d) 791, *supra,* used the words reckless or *negligent* manner. Similar statutes have been enacted in England, Canada, and other states in this country. The fact that some of these statutes overlapped statutes relating to manslaughter is discussed in two interesting articles. Riesenfeld, "Negligent Homicide," 25 Cal. L. Rev. 1; Robinson, "Manslaughter by Motorists," 22 Minn. L. Rev. 755. The prevailing view seems to be that statutes like the one in question are designed to procure convictions by leaving it to the prosecutor to charge the crime in question as a lesser one or to the jury to convict of the lesser offense where they would not do so in the case of the higher crimes of murder and manslaughter. People v. Pociask, 14 Cal. (2d) 679, 96 P. (2d) 788, *supra;* Riesenfeld, "Negligent Homicide," 25 Cal. L. Rev. 1,

*supra.* In Rex v. Preusantanz (1936) 2 Dom. L. R. 421, 432, 65 Can. Cr. Cas. 129, 141, the court said:

"It must be kept in mind that the enactment was passed not for the benefit of the accused but in the public interest in order to induce juries who might be unwilling to find killing by an unlawful act or by an omission, without lawful excuse, to perform or observe a legal duty, to find killing by criminal negligence, for that is what it comes to."

There is no reason why the same facts may not constitute separate offenses under different statutes if statutes so provide. In such cases, "the prosecutor may proceed under whichever law he sees fit," State v. Holt, 69 Minn. 423, 425, 72 N. W. 700, 701; and, where murder or manslaughter is charged, the jury may convict of the crime in question as a lesser one.

The fact that our statutes relating to the subject matter of homicide have adopted different degrees of negligence as the basis of distinguishing between different crimes committed by acts of negligence is a sufficient answer to the argument that degrees of negligence are not recognized in this state. Notwithstanding the rule in civil cases that degrees of negligence are not recognized in this state (see, Peet v. Roth Hotel Co. 191 Minn. 151, 253 N. W. 546; Lauritsen v. American Bridge Co. 87 Minn. 518, 92 N. W. 475), it is our plain duty to recognize and give effect to degrees of negligence where a statute adopts them as a basis for fixing criminal responsibility. 38 Am. Jur., Negligence, § 43.

It would extend the opinion beyond all reasonable length to distinguish all the cases cited contra. It is sufficient to say that none of them are in point. The case of State v. Whatley, 210 Wis. 157, 162, 245 N. W. 93, 95, 99 A. L. R. 749, holds, as defendant contends it does, that the words "gross negligence" involve either a wilful intent to injure or a reckless and wanton disregard of the rights and safety of others, which the law deems equivalent to an intent to injure. The reason the case is not in point is, as the Wisconsin court pointed out, that the meaning is "different from the meaning given to it ['gross negligence'] in other states," and that the dif-

ference in meaning was due to the peculiar legislative and judicial history of the words in that state, which is absent here. Numerous cases, including our own and those of other states, construing automobile-guest-passenger statutes of other states, have been cited, but they are not in point, for the reasons given in People v. Wardell, 291 Mich. 276, 289 N. W. 328. It is contended that the automobile-guest-passenger cases hold that "reckless" and "grossly negligent" mean wilful and intentional wrongs. If by that is meant that the harm was intended, those cases must be rejected, because an intentional killing of a human being by operating or driving an automobile constitutes murder. People v. McMurchy, 249 Mich. 147, 228 N. W. 723. Such a construction would make the statute applicable only in cases of murder, and it should be avoided as contrary to the manifest legislative intention that murder should be punished as such and that the crime created by the statute should not include murder.

■ The standards of guilt prescribed by § 169.11 (§ 2720-175) satisfy the requirements of due process. In this connection, due process requires, as a matter of fundamental justice, a statute creating a crime to prescribe reasonably ascertainable standards of guilt in order that one may know in advance just what acts are required or forbidden. Anderson v. Burnquist, 216 Minn. 49, 11 N. W. (2d) 776; State v. Eich, 204 Minn. 134, 282 N. W. 810; State v. Northwest Poultry & Egg Co. 203 Minn. 438, 281 N. W. 753; Connally v. General Const. Co. 269 U. S. 385, 46 S. Ct. 126, 70 L. ed. 322; International Harvester Co. v. Kentucky, 234 U. S. 216, 34 S. Ct. 853, 58 L. ed. 1284; Rottschaefer, Constitutional Law, pp. 763-767. The standards should be such as are likely to be understood by men of ordinary intelligence and capable of reasonably certain application to the facts of particular cases. The standards need not be so precise as to be capable of reduction to mathematical formulae or of mechanical application. Minnesota ex rel. Pearson v. Probate Court, 309 U. S. 270, 60 S. Ct. 523, 84 L. ed. 744, 126 A. L. R. 530 (affirming State ex rel. Pearson v. Probate Court, 205 Minn. 545, 287 N. W. 297). A catalogue of particulars not susceptible of enumeration in advance is not required. People

v. Mancuso, 255 N. Y. 463, 175 N. E. 177, 76 A. L. R. 514. The standards may be flexible, requiring the exercise of judgment and the making of estimates in applying them to a given set of facts. True, such standards impose on the actor the risk not only of making a right estimate, but also, if the matter be subsequently put in issue, of persuading a trier of fact having the benefit of hindsight that the estimate was right. As we said in State v. Eich, 204 Minn. 139, 282 N. W. 813, *supra*, quoting from Nash v. United States, 229 U. S. 373, 377, 33 S. Ct. 780, 781, 57 L. ed. 1232, 1235: "the law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, * * *." The imposition of such risks on the citizen is not unreasonable, because, as said in United States v. Wurzbach, 280 U. S. 396, 399, 50 S. Ct. 167, 169, 74 L. ed. 508, 510:

"* * * Whenever the law draws a line there will be cases very near each other on opposite sides. The precise course of the line may be uncertain, but no one can come near it without knowing that he does so, if he thinks, and if he does so it is familiar to the criminal law to make him take the risk."

As a matter of fact, law-abiding and prudent men do not calculate how close they can come to violating the law without doing so. Knowing the risk of criminality, they keep on the safe side.

The requirements of due process are satisfied by specifying standards of conduct in terms that have acquired meaning involving reasonably definite standards either according to the common law or by long and general usage. State v. Northwest Poultry & Egg Co. 203 Minn. 438, 281 N. W. 753; Connally v. General Const. Co. 269 U. S. 385, 46 S. Ct. 126, 70 L. ed. 322; and International Harvester Co. v. Kentucky, 234 U. S. 216, 34 S. Ct. 853, 58 L. ed. 1284, *supra.* "Accepted norms of conduct" and "common-law traditions of customary diligence," said Mr. Justice Cardozo as Chief Judge of the New York court in People v. Mancuso, *supra,* give "definiteness and significance to the acts to be avoided." Further, he said that to a standard no more definite than that of "diligence and duty" men "have accommodated themselves for centuries." For

present purposes, it is sufficient to say that the statute employs words that have acquired such meaning at common law. For ages the common law has adopted due care as the basis of normal conduct, and departures therefrom, such as "negligence," "gross negligence," "culpable negligence," and "recklessness," as abnormal conduct for which it prescribed liabilities and punishments. People v. McMurchy, 249 Mich. 147, 228 N. W. 723; People v. Angelo, 246 N. Y. 451, 159 N. E. 394. Blackstone in his Commentaries, Book IV, p. 192, writing more than a century before the Fourteenth Amendment with its due process clause was adopted, defined involuntary manslaughter in terms of acts done "without due caution and circumspection." This is the language of the manslaughter statutes of many states, People v. Pociask, 14 Cal. (2d) 679, 96 P. (2d) 788; People v. McMurchy, *supra;* but was rejected in New York for that of "culpable negligence," People v. Angelo, *supra,* from which our statute derived those words. In People v. McMurchy, *supra,* it was pointed out that at common law for ages past the killing of a human being by driving animals attached to a vehicle was murder or manslaughter depending on whether the act was an intentional or negligent one. In People v. Angelo, *supra,* Judge Andrews, in seeking a meaning of the term "culpable negligence" in the New York homicide statute, reviewed the authorities far back in the early common law and said (246 N. Y. 455, 458, 159 N. E. 395, 397):

"As to precedents at least as early as 1664 the distinction is made between negligence so great as to be blameworthy and, therefore, deserving punishment and the slight degree of negligence that would not justify a criminal charge. * * * And later cases reiterate this settled rule. * * * They use such words as 'gross,' 'reckless,' 'culpable.' Consistently they assert, expressly or by implication, that something more is required than the bare negligence that might be sufficient to support a civil action. They hold that it is for the jury to decide, in view of all the circumstances, whether the act was of such a character as to be worthy of punishment.

\* \* \* \* \*

"* * * However indefinite the rule, however uncertain the meaning of such words as 'gross,' 'wanton,' 'reckless,' 'slight,' yet in view of the facts of a particular case, both the rule and the words do convey an idea to the jury sufficient to guide their action."

Negligence as a test of criminal responsibility is held generally to meet the requirements of due process. Annotation, 83 L. ed. 900 to 908.

Our decisions are in full accord with the view that departure from due care constitutes a sufficiently definite standard of criminal responsibility. In State v. Eich, 204 Minn. 134, 141, 282 N. W. 810, 814, *supra,* we upheld as sufficiently definite a statute making it a crime "unjustifiably" to administer any poisonous drug to, or to expose the same with intent that it should be taken by, any animal. We there pointed to, as sufficiently definite, the standards adopted in homicide statutes, such as in the case of murder in the third degree, in cases involving the killing of a human being "when perpetrated by an act 'eminently dangerous' to others and 'evincing a depraved mind, regardless of human life,' " and in the case of manslaughter in the second degree where such killing is caused by an act of "culpable negligence." Such standards as "unjustifiably," acts "eminently dangerous to others, and evincing a depraved mind, regardless of human life," and "culpable negligence" are so clearly analogous to "reckless" and "grossly negligent" that the cited case must be deemed to be authority for holding them sufficient standards of conduct. In State v. Goldstone, 144 Minn. 405, 408, 175 N. W. 892, 893,[3] we upheld a statute making it a crime to drive a motor vehicle on a public highway at a speed greater than

[3]The Goldstone case has been cited in many cases to sustain, against the objections raised here, the constitutionality of statutes adopting similar standards of guilt. See, Gallaher v. State, 193 Ind. 629, 141 N. E. 347, 29 A. L. R. 1059; Commonwealth v. Pentz, 247 Mass. 500, 143 N. E. 322; People v. McMurchy, 249 Mich. 147, 228 N. W. 723; People v. Grogan, 260 N. Y. 138, 183 N. E. 273, 86 A. L. R. 1266; Usary v. State, 172 Tenn. 305, 112 S. W. (2d) 7, 114 A. L. R. 1401.

is "reasonable and proper, having regard to the traffic and use of the [high]way, or so as to endanger the life or limb or injure the property of any person." The standards employed there are comparable to those involved here.

Acceptance of these views would seem to compel the conclusion that statutes employing such standards as "reckless" and "grossly negligent" in connection with the operation or driving of vehicles are sufficiently definite to comply with due process. The authorities so hold. State v. Andrews, 108 Conn. 209, 142 A. 840 (driving "recklessly"); People v. McMurchy, 249 Mich. 147, 151, 228 N. W. 723, 725 (driving in "careless, *reckless,* or negligent" manner [italics supplied]); People v. Grogan, 260 N. Y. 138, 183 N. E. 273, 86 A. L. R. 1266 ("reckless driving"); People v. Gardner, 255 App. Div. 683, 684, 8 N. Y. S. (2d) 917, 918 (driving in a *"reckless* or culpably negligent manner" [italics supplied]). As an example of the expressions used, we quote only from State v. Andrews, 108 Conn. 213, 142 A. 841, *supra:* "The word ['recklessly'] has a clear and commonly understood meaning, so that one of ordinary intelligence is not left in doubt as to its purport." In People v. Smith, 36 Cal. App. (2d) Supp. 748, 92 P. (2d) 1039, in a thorough and exhaustive opinion, a statute making it a crime to drive any vehicle upon a highway "in such a manner as to indicate either a wilful or a wanton disregard for the safety of persons or property," which is identical with our statutory definition of reckless driving, was sustained against the objections made here. Statutes using the words "negligence," "gross negligence," and "culpable negligence" likewise are upheld. People v. McMurchy, *supra* ("negligence"); Naudzius v. Lahr, 253 Mich. 216, 234 N. W. 581, 74 A. L. R. 1189 ("gross negligence"); Shaw v. Moore, 104 Vt. 529, 162 A. 373, 86 A. L. R. 1139 ("gross negligence"); People v. Gardner, *supra* ("culpably negligent"). See, 38 Am. Jur., Negligence, § 47. In Shaw v. Moore (104 Vt. 531, 162 A. 374, 86 A. L. R. 1142), *supra,* the court said that, while it must be admitted that the words "gross negligence" cannot be defined with the utmost precision, they have "a meaning of sufficient distinctness to be

applied usefully by courts and juries to particular facts before them."

There are some cases such as Hayes v. State, 11 Ga. App. 371, 75 S. E. 523; State v. Lantz, 90 W. Va. 738, 111 S. E. 766, 26 A. L. R. 894; Ex parte Slaughter, 92 Tex. Cr. 212, 243 S. W. 478, 26 A. L. R. 891, and others from these states, which, while not strictly in point, express contrary views and hence must be deemed contra. We expressly disapproved the Hayes case in State v. Goldstone, 144 Minn. 405, 175 N. W. 892, *supra.* All these cases and the rule which they announce have been expressly disapproved. Gallaher v. State, 193 Ind. 629, 141 N. E. 347, 29 A. L. R. 1059; People v. McMurchy, 249 Mich. 147, 228 N. W. 723; People v. Grogan, 260 N. Y. 138, 148, 183 N. E. 273, 277, 86 A. L. R. 1266, 1272; Mulkern v. State, 176 Wis. 490, 187 N. W. 190; see, Annotation, 83 L. ed. 900-908, *supra.*

Our conclusion is that the statute in question sets up standards of guilt that accord with due process.

■ The information alleges that on March 19, 1944, defendant operated and drove a Mercury sedan on state highway No. 14 in the township of Meriden in Steele county in a reckless and grossly negligent manner with great force into and against the decedent, thereby causing her death, and negatived that the crime alleged constituted either murder or manslaughter. It is claimed that the information is insufficient because it charges, in the language of the statute, that the operation and driving of the automobile was in a "reckless" and "negligent manner" without alleging the specific facts showing why it was "reckless" or "negligent." An indictment or information setting forth the offense charged in the language of the statute is sufficient where the statute sets forth the elements of the offense and the statutory language according to its natural import is fully descriptive of the offense. State v. Eich, 204 Minn. 134, 282 N. W. 810; State v. Omodt, 198 Minn. 165, 269 N. W. 360. The words "in a reckless" and "grossly negligent manner" are descriptive of the offense and not mere conclusions. As pointed out above, the use of the words "reckless" and "grossly negligent"

sufficiently convey to the court and jury what is meant. An information, as here, charging the offense in such language is sufficient. In re Von Perhacs, 190 Cal. 364, 212 P. 689; People v. Allegretti, 287 Ill. App. 631, 5 N. E. (2d) 618; State v. Welford, 29 R. I. 450, 72 A. 396. These cases involved charges of "reckless" driving. Charging that the defendant drove a motor vehicle on a highway so as to endanger the lives and safety of the public, following the statutory language, has been held sufficient. Commonwealth v. Gurney, 261 Mass. 309, 158 N. E. 832; Commonwealth v. Mara, 257 Mass. 198, 153 N. E. 793. For like reasons, a charge of driving in a "grossly negligent manner" is sufficient. There are some cases contra, but we think the weight of reason and authority supports the view that the allegations in question are sufficient. The cases pro and con are collected in the annotation in 115 A. L. R. 357. Under § 628.10(2), (§ 10639, subd. 2), an indictment should contain "A statement of the acts constituting the offense, in ordinary and concise language * * *." The object of this requirement so plainly is to free criminal pleadings of common-law formality, technicality, and tautology that no citation of authorities is necessary.

"Long gone is the time when, in respect to an information or indictment, a defendant can successfully claim not to be able to get from it the knowledge in respect to the charge against him that any other sane and intelligent reader would gather from even a casual reading, without resorting to inference." State v. Lopes, 201 Minn. 20, 24, 275 N. W. 374, 376.

Where more specific allegation is necessary to enable an accused to defend, a bill of particulars will be granted upon a proper showing. Here, no such demand was made. It is apparent from the record that defendant was sufficiently informed of the charge against him and that his defense did not suffer because fuller and more specific allegations were not made.

■ The charge with respect to reckless driving is challenged upon the grounds that it did not inform the jury that by "reckless" is meant an intentional wrong and that in order to be reckless the

defendant himself must have been conscious from his own knowledge of existing conditions that his conduct would naturally or probably result in injury. Reckless driving is not an intentional wrong in the sense that the harm resulting is intended. The charge made it clear that to be reckless the act of driving must have been wilful, which is the same as intentional. By "reckless" is not meant that the harm is intended, as we pointed out above. It is not necessary that defendant himself should have recognized his acts as being extremely dangerous. It is enough if he knew or should have known that fact from the circumstances of the case. Restatement, Torts, § 500, *comments c* and *f.*

■ The charge with respect to "gross negligence" is challenged on the same grounds. As pointed out above, "gross negligence" does not mean intentional. Nor does it mean consciousness of wrongdoing. Altman v. Aronson, 231 Mass. 588, 121 N. E. 505, 4 A. L. R. 1185.

■ After the jury had retired, it returned for further instructions concerning the effect of decedent's contributory negligence, if any, because of her being on the wrong side of the road when she was hit. The court refused defendant's request to reread the instructions on this point, but stated the substance of them. This was not error.

■ It is urged that it was error to charge that there should be a conviction if it appeared that defendant caused his wife's death by operating or driving his car in either a reckless *or* grossly negligent manner, for the reason that the indictment alleged that the operation and driving of the car was both reckless and grossly negligent. The statute uses the disjunctive "or." The instruction followed the statute. It correctly stated the law. It is not necessary for the state to prove every allegation in the indictment or information. It is enough to prove the crime charged. Where the crime charged may be committed in different ways, defendant's guilt may be established by proof that he committed it in any one or more of the ways in which it might be committed. State v. Goldstone, 144 Minn. 405, 175 N. W. 892, *supra.* So it is here. De-

fendant's guilt could be established by proof that he drove in either a reckless *or* grossly negligent manner.

■ Finally, defendant contends that the evidence does not sustain a finding that he drove in either a reckless or grossly negligent manner. The accident occurred after dark on a paved highway extending east and west. During the day, beginning at about 11 in the morning, defendant drank considerable beer and whiskey. Late in the afternoon, while he and his wife were in a tavern drinking beer, he had become loudspoken, quarrelsome, and somewhat ugly. She requested one of the proprietors to take her home. Later, when the husband got ready to depart and she showed some unwillingness to go with him, he threatened to "drag" her along. They then went to another tavern, where, it was said, he drank more whiskey before he entered and more beer afterwards. In this tavern he talked loudly and quarrelled with his wife. She left. He thought she went out to sit in his automobile. After a few minutes he went out and discovered that the fact was not so. Assuming that she had started to walk west toward their home in Waseca, he drove in that direction to overtake her. After driving several miles, he turned around and came back to the tavern. Meanwhile, a motorist who had come on the pavement from the east reported at the tavern that he had passed a woman dressed in dark clothes walking in the right lane going east near the center line of the pavement. Thereupon, when informed of these facts, defendant concluded that this woman was his wife and drove east on the pavement to overtake her. While so driving, he hit her with his automobile and killed her.

Defendant's version is that his car was the third of three cars going east in the right-hand lane; that his car was about 300 feet behind the car ahead of him; that the car ahead of him was a like distance behind the first car; that they met two cars coming toward them in the lane for westbound traffic; that the lights from these cars blinded him; that immediately after he passed the first westbound car he saw his wife for the first time immediately in front of him on the pavement; that he swerved to his left to avoid

hitting her, but failed in his purpose; that he hit her with the right front fender and lamp with such force and violence that she was thrown over the front of the car so as to strike her head against the post on the right side of the body of the car between the windshield and the front door; that she fell to the side of the road; and that he drove on a short distance, turned around, and came back to the scene of the accident. Defendant testified that his speed was about 35 or 40 miles per hour, but he told the sheriff a short time after the accident that he had been "driving like the devil." Defendant's explanation of the killing was that it was an unavoidable accident occurring because of the fact that his wife apparently had been walking on the shoulder and stepped in front of his car and that he was unable to stop or avoid hitting her, although he tried to do so by swerving to his left.

The state's version is that she was walking on the shoulder in plain sight of him and that he hit her because he failed to see her and take any precautions to avoid hitting her. The driver of the first westbound car testified that as he passed three eastbound cars he saw a woman, who was proved to be defendant's wife, walking east on the shoulder on the south side of the road; that as he passed the third car, which was defendant's, he heard a noise that sounded as if that car had hit something; that thereupon he stopped on the shoulder on the north side of the road to ascertain what the fact was; that he found defendant's wife dead in the ditch on the south side of the road; that about ten minutes afterward defendant returned to the scene of the accident; that defendant's breath gave off an odor of liquor and that he "weaved" when he walked. The witness's wife substantiated his testimony. The driver of the second car going west did not see defendant swerve to his left as he claimed, although the witness saw defendant's car and would have seen the swerve if it had occurred.

There are some physical facts that are not in dispute. The shoulder on the south side of the pavement was eight or nine feet wide. It had a sod surface. The surface of the road and the shoulder were dry, although there were some patches of snow on

the latter. The night was dark, but clear. All the cars involved were equipped with lights that were lit. After the accident, defendant's wife's hat and one of her shoes were found on the pavement. Her body was thrown completely over the shoulder into the ditch where it was found. There was no evidence of tracks on the shoulder made by defendant's car, but there was no evidence that anybody looked for any. It is conceded that the evidence sustains a finding that defendant was drunk at the time of the collision and that because of his drunkenness he weaved when he walked.

We think that the evidence sustains a finding that defendant caused the death of his wife by driving his car against her in a reckless and grossly negligent manner. Of course, if defendant's version of what occurred were true, he was not guilty, because then it would have been a clear case of unavoidable accident. But the jury was justified in rejecting his version. This it was amply warranted in doing, because the evidence of the driver of the first westbound car and his wife showed that defendant's wife was on the shoulder on the south side of the road just before he hit her and that it was well-nigh impossible for her to step out in front of him as he claimed she did. In view of the facts that cars were moving in both the east and west lanes at the time and place of the accident and that, if decedent had been on the pavement, she would have been hit by one of such cars, it is extremely unlikely that she was on the pavement. That being true, she must have been on the shoulder. The testimony of the driver of the second westbound car negatived the fact that defendant swerved to the left to avoid hitting her as he claimed. With defendant's version rejected, the case was one of his running down his wife, who was in clear sight ahead of him on the shoulder. The fact that defendant's wife was found in the ditch and not on the shoulder lends support to an inference that defendant's car was on the shoulder when it hit her and that she dropped off into the ditch because of the fact that the car occupied the shoulder. The fact that some lighter objects such as the wife's hat and shoe were found on the pavement is not inconsistent with this view, because they might

well have been thrown in the air by the impact and have fallen over the left-hand side of the car onto the pavement. The inference is inescapable that the reason defendant did not avoid hitting his wife with his car was that he was either reckless or grossly negligent. He knew that she was walking east on the highway and that she was some place ahead of him. This fact alone called for precaution. The place where she was walking was lit by the lights of his own and the other cars. He should have seen her on the shoulder. Even if he did not see her there, he would not have hit her if he had stayed on the pavement. In spite of the facts that she was plainly visible to him and that he would not have hit her if he had remained on the pavement, he hit her by getting out onto the shoulder. In any view, this was recklessness or gross negligence. If the accident was due to defendant's intentional disregard of his wife's safety, it was recklessness. The language used in the similar case of Foster v. Redding, 97 Colo. 4, 7, 45 P. (2d) 940, 942, is applicable here:

"One who is willfully and wantonly negligent may not be intoxicated, but one who, sufficiently under the influence of liquor to impair his capacity as a driver, or who has just consumed intoxicants sufficient to speedily reduce him to incapacity, yet sufficiently sober to know he is undertaking a sober man's job, puts himself at the wheel of an automobile and takes the road, is guilty of a willful and wanton disregard of the rights of all persons who ride with him or use the highway he travels."

If the accident was due to either failure to exercise any care to discover deceased or to avoid hitting her, defendant's negligence was gross. As we said in the similar case of State v. Kline, 168 Minn. 263, 267, 209 N. W. 881, 882, where a drunken motorist hit and killed a pedestrian:

"Common sense, in the absence of any statute on the subject, suggests that for an intoxicated person to undertake to drive an automobile on a much traveled highway is gross or culpable negligence. And, if such negligence is shown to result in so driving

as to strike down and kill a person traveling in the proper place upon the highway, there should be no difficulty in finding that the driver's culpable negligence caused the homicide.''

The fact that defendant had been informed that his wife was walking on the pavement and passed a westbound car should have conveyed to him information that she was in the right-hand lane going east, and hence, that she not only was not where the statute required her to be, but on the contrary that she was directly in his path. Because of that fact the jury might adopt the view that he was in effect forewarned that she was in a place of danger so far as he was concerned. Even if the wife were negligent in not walking on her side of the road so as to be facing oncoming traffic as required by § 169.21 (§ 2720-207), her contributory negligence was no defense, except insofar as it went to show either that defendant was not negligent or that his conduct was not the proximate cause of her death. State v. Kline, *supra.* These issues were submitted to the jury. The finding implicit in the verdict is that deceased's contributory negligence, if any, was not the cause of the accident. That finding is amply sustained by the evidence. While defendant cannot be convicted of homicide in any degree merely because he was driving while drunk, drunkenness in connection with other circumstances warrants such a conviction. Here, there was not only drunkenness, but failure of defendant to see his wife ahead of him and such management of the car on his part that he hit her when she was in a place of apparent safety. It is a physiological fact, of which courts can take judicial notice, that in some cases drunkenness begets recklessness (see, Herzog, Medical Jurisprudence, § 720) and that drunkenness not only impedes perception, but the ability to react after the impulse for action has been formed. The instant case is an example of the impairment of the user's mental and physical processes by excessive use of intoxicating liquor with resulting harm to another.

We have examined the authorities cited by defendant. Most of them are not in point, because they involve either automobile-guest statutes or the doctrine of last clear chance. The case of

People v. Hurley, 13 Cal. App. (2d) 208, 56 P. (2d) 978, is not in point, because there the offense charged was manslaughter and not that of criminal negligence in the operation of a vehicle resulting in death, as here, and because that case did not involve a fact situation, as here, where the defendant knew of the presence of deceased on the highway before hitting her. The case is directly opposed to our decisions in cases like State v. Kline, *supra,* and Raths v. Sherwood, 195 Minn. 225, 262 N. W. 563, and its authority is impaired by disapproval of it in the jurisdiction where it was rendered. People v. Pociask, 14 Cal. (2d) 679, 96 P. (2d) 788, *supra.*

Our conclusion is that the statute is constitutional; that the indictment was sufficient; that defendant had a fair trial, and that the evidence amply sustains the conviction.

Affirmed.

[1]Reported in 21 N. W. (2d) 474.