495 P.2d 318

**The STATE of Utah, Plaintiff and Respondent,**

v.

**Weldon BASSETT and Judy Bassett, Defendants and Appellants.**

**No. 12727.**

Supreme Court of Utah.

March 27, 1972.

---

6. Douglas v. Alabama, 380 U.S. 415, 420, 85 S.Ct. 1074, 13 L.Ed.2d 934, 938 (1965).

7. 373 U.S. 179, 186, 83 S.Ct. 1151, 1154–1155, 10 L.Ed.2d 278, 283 (1963).

8. 373 U.S. 187, 83 S.Ct. 1151.

9. 373 U.S. 189, 83 S.Ct. 1156; also see United States v. Brickey, (C.A. 8th 1970) 426 F.2d 680, 688.

I. Gordon Huggins, Ogden, for defendants-appellants.

Vernon B. Romney, Atty. Gen., David S. Young, William T. Evans, Asst. Attys. Gen., Salt Lake City, for plaintiff-respondent.

TUCKETT, Justice:

The defendants were found guilty in the court below of the crime of involuntary manslaughter. The charge against the defendants arose out of the death of their minor child.

The defendants Weldon and Judy Bassett were husband and wife and on September 11, 1970, Judy Bassett gave birth to a daughter, Erica Jean Bassett, at a hospital in Ogden, Utah. At all times we are concerned with here Judy Bassett suffered from poor eyesight and was rated as being industrially and legally blind. The delivery

of the baby was a breech birth and the family doctor was in attendance at the time.

On November 8, 1970, Erica was taken to a hospital for treatment of an ailment manifested by convulsions and a mild fever. The family physician examined the baby and a spinal tap was performed at the hospital and the fluid extracted contained traces of blood. The child was subsequently released and thereafter on November 24, the child was again taken to the hospital where she was pronounced dead. An autopsy was performed and it was found that the child had died from an acute and chronic subdural hematoma. The baby also had fractured ribs but these did not contribute to her death.

A complaint was filed charging the defendants with the crime of involuntary manslaughter pursuant to the provisions of Section 76–30–5, U.C.A.1953, which reads as follows:

Manslaughter is the unlawful killing of a human being without malice. It is of two kinds:

(1) Voluntary . . . .

(2) Involuntary, in the commission of an unlawful act not amounting to a felony, or in the commission of a lawful act which might produce death, in an unlawful manner or without due caution and circumspection.

After a preliminary hearing the defendants were bound over for trial.

At the trial in the district court no evidence was adduced on behalf of the prosecution which showed that either of the defendants committed any act or omission which resulted in the death of the baby. Even though the record is devoid of any evidence which would tend to show that the defendants or either one of them committed any injury upon the body of the baby, nevertheless the court submitted the case to the jury upon the theory that the defendants being parents of the deceased child and being responsible for the child's protection imposed upon the defendants the duty of using ordinary reasonable care for the child's safety. The court instructed the jury in effect that if the defendants were guilty of gross negligence in the care of the child in such a manner as to evince wilful disregard for the consequences; and there being no circumstances amounting to a satisfactory excuse; and if the fatal injury resulted from such lack of care, then such acts or omissions were a sufficient basis to find the defendant guilty.

The State had the burden of proving beyond a reasonable doubt that the death of the child resulted proximately from some act or omission on the part of defendants. Even a showing of a mere thoughtless omission or slight deviation from the norm of prudent conduct is insufficient to support a finding of criminal negligence. In order to make out a case under the statute above referred to it is

incumbent upon the State to show an unlawful act or an infraction which is done in marked disregard for the safety of others.[1] In this case there being no evidence to show any act on the part of the defendants or either one of them, it was error for the court to submit the case to the jury and to permit the jury to speculate upon the guilt or innocence of the defendants. The unfortunate death of the baby from injuries suffered by her from a source not shown by the evidence is insufficient on which to base a conviction. After careful consideration of the record we are of the opinion that the conviction must be reversed and it is so ordered.

CALLISTER, C. J., and HENRIOD and ELLETT, JJ., concur.

CROCKETT, Justice (dissenting).

I do not disagree with the statements of law in the opinion. What I disagree with is their application to the evidence. Therefore, I dissent from the reversal of the conviction. I agree with the view of the trial court, that there was sufficient basis in the evidence upon which reasonable minds, acting fairly and reasonably thereon, could believe beyond a reasonable doubt that the defendants were guilty of manslaughter in the death of the child.

It is not surprising that there is no direct evidence as to how the baby suffered the injuries from which she died. In this, as in most types of crime, it is not usually committed in the presence of witnesses. The only means of ascertaining what occurred is from the circumstances shown; and it should be borne in mind that the jury is entitled to consider not only the direct evidence, but to draw all reasonable inferences that fairly can be deduced therefrom. See State v. Tryfonas, 26 Utah 2d 140, 486 P.2d 389; State v. Laub, 102 Utah 402, 131 P.2d 805.

From the indisputable facts shown: the subdural hemorrhage in the head; the bruising about the ear; and the broken ribs, there is ample evidence for a reasonable belief that the child had received severe traumatic blows which resulted in her death. Upon the basis of that evidence, and the further fact that the baby was under the care and control of the defendants, I think the trial court was justified in submitting the question of the defendants' guilt or innocence to the jury. They have had what they are entitled to, a full and fair trial and the jury found them guilty. I would affirm their conviction.

1. State v. Lingman, 97 Utah 180, 91 P.2d 457; State v. Thatcher, 108 Utah 63, 157 P.2d 258; State v. Bolsinger, 221 Minn. 154, 21 N.W.2d 480.