STATE of Minnesota, Respondent,

v.

**Paul Anthony KYCIA, Appellant.**

No. C3–02–1457.

Court of Appeals of Minnesota.

July 15, 2003.

Mike Hatch, Attorney General, David Woodward, Assistant Attorney General, St. Paul, MN; and

Brett Corson, Fillmore County Attorney, Preston, MN, for respondent.

James E. Ostgard, Minneapolis, MN, for appellant.

Considered and decided by ANDERSON, Presiding Judge, PETERSON, Judge, and HALBROOKS, Judge.

## OPINION

G. BARRY ANDERSON, Judge.

Appellant was convicted of reckless discharge of a firearm and now challenges that conviction. Appellant argues that the district court abused its discretion when instructing the jury and that the prosecutor's comments during closing arguments constituted prejudicial misconduct. We reverse and remand.

## FACTS

This appeal arises out of a hunting accident. Both appellant Paul Anthony Kycia and Pat Thomas, the victim, were legally hunting turkey on the same farm in Fillmore County. Appellant believed he

would be the only hunter on the land that day. The record is unclear whether Thomas believed he had the farm to himself.

Thomas arrived at the farm at approximately 4:45 a.m. He was dressed head to toe in camouflaged clothing. Even Thomas' backpack and rifle were camouflaged. Thomas, who had walked the farm earlier, hiked about half a mile and decided to set up among a strip of trees and saplings close to a stand of pine where he had heard male turkeys gobbling. He placed two decoys by the trees, sat in his spot, began making female turkey calls and waited.

Although the exact time appellant arrived at the farm or set up is not clear, it appears he was in position to hunt around 5:30 A.M. Appellant settled on a particular place to hunt based in part on his belief that he was "miles away" from the nearest hunter. Although he saw Thomas' truck parked at the farm while appellant made his way to his hunting spot, he believed the truck belonged to someone fishing nearby. As it turned out, appellant and Thomas were only approximately 167 feet away from each other, yet were oblivious to each other.

Some time between 8:15 and 8:30 A.M., while making turkey calls, and moving his head back and forth slowly, Thomas heard a shot fired behind him, and felt pellets strike his face and body. Thomas was struck in the scalp, just above his eye and in the left arm and shoulder. Immediately after the injury, Thomas lay flat on the ground and shouted, "Don't shoot, don't shoot. You shot me."

Appellant, after firing his shotgun and believing he had shot a turkey, ran to Thomas' location. Thomas testified that when appellant got to him, Thomas asked why appellant shot at him and appellant allegedly replied "I seen movement." A few days after the shooting, appellant told the police he

> saw movement in the brush up above, it was kind of thin little peninsula of woods, and what I thought was a turkey, kind of looked like it was standing up and, basically it kind of went down a little bit, basically I took a shot and I ran up the hill thinking that I got a bird, and I ran up and there was a man named Pat Thomas that screamed, "don't shoot again." I was just dumbfounded.

At trial appellant testified that he did not shoot at mere movement, but shot at what he was sure was a turkey. Appellant helped Thomas to his truck. Thomas drove to an area hospital but the doctors who treated him could not remove all of the pellets from his body.

Appellant was charged with one count of reckless discharge of a firearm, in violation of Minn.Stat. § 609.66, subd. 1a(a)(2) (2000). Following the close of evidence there was considerable debate about the jury instructions to be given concerning the elements of the offense. The district court ultimately told the jury that it should convict appellant only if it found beyond a reasonable doubt that appellant (1) intentionally discharged a firearm; (2) that he did so "under circumstances that endangered the safety of Patrick Thomas. The defendant's knowledge of the endangerment is not required to be proven by the state;" and (3) that he did so on April 28, 2001, in Fillmore County.

The district court provided the jury with a verdict form that read:

> We, the jury, find the defendant guilty of the charge that the defendant intentionally discharged a firearm under circumstances that endangered the safety of another, to-wit: the defendant did

discharge a shotgun striking Patrick Thomas.[1]

Appellant was convicted and sentenced to a five-year term of probation. This appeal followed.

## ISSUE

Did the district court's instructions and verdict form materially misstate the law, by failing to adequately instruct the jury that it must consider the totality of the circumstances present at the moment appellant discharged his rifle, in order to convict appellant of reckless discharge of a firearm?

## ANALYSIS

Appellant argues that the district court committed reversible error by failing to adequately instruct the jury concerning the "under circumstances which endanger the safety of another" element of the offense of reckless discharge of a firearm. Further, appellant asserts that the district court's jury-verdict form encouraged the jury to render a verdict without considering every element of the charged offense.

■■■ District courts are allowed "considerable latitude" in the selection of language for the jury instructions. *State v. Gray,* 456 N.W.2d 251, 258 (Minn.1990) (quoting *Alholm v. Wilt,* 394 N.W.2d 488, 490 (Minn.1986)). Jury instructions must be viewed in their entirety to determine whether they fairly and adequately explain the law of the case. *State v. Flores,* 418 N.W.2d 150, 155 (Minn.1988).

An instruction is in error if it materially misstates the law. Furthermore, it is well settled that the court's instructions must define the crime charged. In accordance with this, it is desirable for the court to explain the elements of the offense rather than simply to read statutes.

*State v. Kuhnau,* 622 N.W.2d 552, 556 (Minn.2001) (citations omitted). Verdict forms are considered part of the jury instructions and subject to the same standard of review. *State v. Ascheman,* 589 N.W.2d 486, 491 (Minn.App.1999).

■■■ The only issue in dispute at trial was whether appellant discharged his firearm in a reckless manner. A conviction of reckless endangerment with a firearm requires proof that the defendant "intentionally discharge[d] a firearm under circumstances that endanger the safety of another." Minn.Stat. § 609.66, subd. 1a(a)(2) (2000). Appellant contends that when the district court instructed the jury that appellant could be convicted if the jury found beyond a reasonable doubt that appellant intentionally discharged a firearm "under circumstances that endangered the safety of Patrick Thomas" and that the state was not required to prove that appellant knew he was endangering anyone, the district court improperly created a strict liability offense. Appellant argues that this instruction could lead the jury to convict appellant regardless of the circumstances when he fired his rifle.

Moreover, appellant claims that the verdict forms compound this problem by also leading the jury to believe it was irrelevant what facts appellant knew when he discharged his shotgun. Appellant contends that the verdict form implies that the only relevant issue for the jury to decide is whether appellant intentionally discharged his firearm "under circumstances that endangered the safety of another."

Both parties rely on *In re Welfare of A.A.E.,* 590 N.W.2d 773 (Minn.1999) in support of their respective arguments. In *A.A.E.,* a 16–year–old deer hunter climbed

---

1. The jury received a nearly identically worded not-guilty form.

into a deer stand and saw what he thought were antlers and a "brown spot." *Id.* at 774–75. He looked through his scope, and seeing nothing orange or any other indication that another hunter was present, he fired. *Id.* He fired again, hoping to scare the deer into better position. *Id.* Seeing movement in the woods, he fired three more shots at 3–to–5 second increments. *Id.* A.A.E., in fact, had hit another hunter dressed in orange multiple times and had inflicted serious injuries. *A.A.E.,* 590 N.W.2d at 775. He was charged by petition with reckless discharge of a firearm. *Id.* at 775.

In *A.A.E.,* the supreme court held the statute's "circumstances" language required an analysis of

> whether, under the totality of the circumstances extant at the moment the trigger was pulled-including what the defendant knew and particularly important here, what the defendant did not know—would the discharge of the firearm place another person's safety in danger.

*Id.* at 777.

The *A.A.E.* court chose not to define the "outer boundaries of what those 'circumstances' might be," *Id.* But it did hold that because the child had intentionally fired his gun "at either a noise or a movement" at least four times without knowing what he was actually shooting at, and because the victim was only 90 yards away, and because her blaze orange clothing should have been visible to the child, there were

> circumstances of endangerment, and whether known or unknown to him, when coupled with appellant's intent to discharge the firearm, the evidence was sufficient beyond a reasonable doubt to prove that appellant "intentionally discharged a firearm under circumstances that endangered another person" in vio-

lation of Minn.Stat. 609.66, subd. 1a(a)(2).

*Id.*

The record here reflects that the district court was quite conscious of the *A.A.E.* holding, and took considerable care in crafting the instructions. After much debate, the district court added language stating that the state was not required to prove appellant's knowledge at the time of the shooting.

In *A.A.E.,* the supreme court analyzed at some length the circumstances surrounding the shooting in that case. *A.A.E.,* 590 N.W.2d at 776–77. It was central to the court's analysis what A.A.E. knew and did not know at the moment he fired his rifle. *Id.* at 777. Although the court clearly stated it was not requiring an analysis of whether the defendant knew his acts were endangering others, it focused on the circumstances the child was aware of, or should have been aware of, when he discharged his weapon. *Id.*

Here, the district court by telling the jury the state did not have to prove appellant's knowledge, impermissibly invited the jury to disregard what facts appellant knew or should have known when he discharged his firearm. We conclude that the jury was not properly instructed about the importance of the circumstances present at the time of the shooting. The jury was told only to consider if Thomas was in danger when appellant fired his rifle. The fact that he was shot is conclusive evidence on that point. But by instructing the jury to disregard what appellant knew, the jury may have been tempted to disregard whether appellant's actions were reasonable under the circumstances.

■■■ Of particular significance to our analysis is the verdict form, which also suggests that this was a strict liability offense and the fact that Thomas was shot

would be enough to convict appellant. The verdict form states that the defendant can be found guilty if the jury found that he intentionally discharged his rifle under circumstances that endangered another. The instruction then suggests what circumstances would qualify: "to-wit: Defendant did discharge a shotgun striking Patrick Thomas." This form leads jurors to believe that the fact that Thomas was shot was sufficient evidence that appellant acted recklessly.

The jury instructions materially misstated the law by allowing the jury to conclude that what facts appellant knew or did not know when he discharged his rifle were irrelevant. The *A.A.E.* court was clear that the fact finder in a reckless-discharge-of-a-firearm case is to examine the totality of the circumstances surrounding the shooting, including what a person knew and did not know when he pulled the trigger. *Id.*

Because we have concluded that a new trial is required, it is not necessary to address appellant's claims regarding the closing arguments. But because the matter may be re-litigated, some discussion of the troubling aspects of the state's closing arguments is appropriate. By arguing that the jury should acquit if it was "absolutely" sure appellant was innocent, the state came dangerously close to shifting the burden of proof to appellant. Further, by arguing the county's woods must be kept safe from irresponsible hunters, the state encouraged the jury to consider facts outside the evidence when deliberating. Finally, by arguing that there are only two types of defendants—the innocent and those who avoid responsibility for their acts, the state suggested those exercising their constitutional right to a trial have acted in a questionable manner. This characterization is highly disturbing. A prosecutor may not seek a conviction at any cost, but must instead protect "the rights of the accused" as well as enforce the law. *State v. Salitros*, 499 N.W.2d 815, 817 (Minn.1993) (quotation omitted).

### DECISION

The district court abused its discretion by instructing the jury it did not have to consider the facts appellant knew or should have know when he fired his rifle. This error was compounded by the verdict form that gave the clear impression that the mere fact appellant fired his rifle and an injury occurred was sufficient to return a guilty verdict.

**Reversed and remanded.**