STATE of Minnesota, Respondent,

v.

Timothy Kenbert ENGLE, Appellant.

No. A05–2423.

Supreme Court of Minnesota.

Jan. 3, 2008.

Steven J. Meshbesher, Meshbesher & Associates, P.A., Minneapolis MN, for Appellant.

Lori Swanson, Attorney General, Criminal, and Mark Nathan Lystig, Ramsey County Attorney, St. Paul, MN, for Respondent.

OPINION

ANDERSON, RUSSELL A., Chief Justice.

We granted review in this case to determine whether a conviction under Minn.

Stat. § 609.66, subd. 1a(a)(3) (2006), which proscribes recklessly discharging a firearm in a municipality, requires proof that the firearm was intentionally discharged. We hold that a conviction under Minn.Stat. § 609.66, subd. 1a(a)(3), does not require proof of an intentional discharge, but rather requires proof of a conscious or intentional act, in connection with the discharge of a firearm, that creates a substantial and unjustifiable risk that the actor is aware of and disregards. We remand to the district court for reconsideration consistent with this opinion.

Appellant Timothy Kenbert Engle was convicted of recklessly discharging a firearm in a municipality in violation of Minn. Stat. § 609.66, subd. 1a(a)(3). The court of appeals affirmed. *State v. Engle,* 731 N.W.2d 852 (Minn.App.2007).

On November 2, 2003, Engle, a private security guard, arrived at a St. Paul housing complex to assist a fellow security guard in apprehending a suspected thief. The suspect attempted to flee, but eventually the guards held him at gunpoint, sitting in the driver's seat of a stolen car. Somehow, in the course of removing the suspect from the car, Engle discharged his gun, shooting and paralyzing the suspect. Both parties concede that the discharge was unintentional.

After a bench trial, the district court found Engle guilty of recklessly discharging a firearm within a municipality. The court defined "recklessly" as "a conscious and intentional act that the defendant knew or should have known created an unreasonable risk of harm to others." The court noted that "[b]oth parties agree that the discharge of the firearm was unintentional" but concluded that "[t]he law is clear to me that no intent to discharge * * * needs to be established." The court found that the reckless act satisfying the statutory requirement "was having the

weapon positioned so that it could be discharged and cause harm while [Engle extracted the suspect] from the car." The court stayed imposition of Engle's sentence and placed him on probation for 2 years.

Engle appealed, arguing to the court of appeals, among other things that the district court erred in not requiring proof that he intentionally discharged his weapon. *Engle,* 731 N.W.2d at 854. The court of appeals affirmed, holding that discharge need not be intentional. *Id.* at 862. Engle petitioned this court for review, which we granted only as to the issue of whether subdivision 1a(a)(3) requires an intentional discharge of a firearm.

## I.

We review questions of statutory interpretation de novo. *State v. Wiltgen,* 737 N.W.2d 561, 570 (Minn.2007). "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature. Every law shall be construed, if possible, to give effect to all its provisions." Minn.Stat. § 645.16 (2006). If a statute is unambiguous, it is to be given its plain meaning. *Id.; State v. Al–Naseer,* 734 N.W.2d 679, 684 (Minn.2007). If a statute is ambiguous or unclear, we consider "(1) the occasion and necessity for the law; (2) the circumstances under which it was enacted; (3) the mischief to be remedied; (4) the object to be attained;" (5) any former law; "(6) the consequences of a particular interpretation;" (7) legislative history; and "(8) legislative and administrative interpretations of the statute." Minn.Stat. § 645.16.

Minnesota Statutes § 609.66, subd. 1a(a), provides that a person who "(2) intentionally discharges a firearm under circumstances that endanger the safety of another; or (3) recklessly discharges a firearm within a municipality" is guilty of a

felony. In subdivision 1a(a)(3), the adverb "recklessly" modifies the verb "to discharge." On its face, then, the statute prohibits discharging a firearm in a reckless manner. Whether there is ambiguity depends on the definition of "reckless," to which we now turn.

"Reckless" is an ambiguous term. It is not defined in the Minnesota criminal code. *See* Minn.Stat. § 609.02 (2006). The term has not always been used consistently, although it is generally used to define a level of culpability more serious than ordinary negligence and less serious than specific intent to harm. 1 Wayne F. LaFave, *Substantive Criminal Law* § 5.4, at 365–66 (2d ed.2003). Recklessness often describes conduct that exceeds ordinary negligence in two respects: a higher degree of risk, and a higher degree of fault—the actor must be subjectively aware that his conduct creates the risk. *Id.* at 366; *see also* 1 Charles E. Torcia, *Whartons Criminal Law* § 27, at 167–68 (15th ed. 1993) (A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists.).

Two distinct lines of our cases offer two different definitions of recklessness. We were called upon in *State v. Cole* to define recklessness for purposes of, among other provisions, Minn.Stat. § 609.66, subd. 1(1) (2006), which proscribes recklessly handling a gun so as to endanger the safety of another. 542 N.W.2d 43, 51 (Minn.1996). Relying on *State v. Zupetz*, in which we defined "recklessly" in the context of reckless homicide, 322 N.W.2d 730, 733–34 (Minn.1982), we said, "A person acts 'recklessly' when he consciously disregards a substantial and unjustifiable risk that the element of an offense exists or will result

from his conduct * * *. [Both the reckless actor and the intentional] actor [create] a *risk* of harm. The reckless actor is *aware* of the risk and disregards it." *Cole*, 542 N.W.2d at 51–52 (alterations in original); *see also State v. Mauer*, 741 N.W.2d 107, 115 (Minn.2007); *State v. Frost*, 342 N.W.2d 317, 319–20 (Minn.1983).

The definition of "recklessness" in the second line of cases is embodied in the model jury instruction for Minn.Stat. § 609.66, subd. 1a(a)(3), upon which the district court relied in this case. The instruction states that " '[r]ecklessly' means a conscious and intentional act that the defendant knew, or should have known, created an unreasonable risk of harm to others." 10A Minn. Dist. Judges Ass'n, *Minnesota Practice*—Jury Instruction Guides, Criminal, CRIMJIG 32.10 (5th ed.2006). This definition originated in our reckless driving jurisprudence. *See State v. Bolsinger*, 221 Minn. 154, 157, 21 N.W.2d 480, 484 (1946).

We conclude that the *Cole* definition applies to Minn.Stat. § 609.66, subd. 1a(a)(3). The *Cole* definition comports with the most common usage of the term. *See* Torcia, *supra*, § 27; 22 C.J.S. *Criminal Law* § 51 (2006) ("A person is said to act recklessly when he or she consciously disregards a substantial and unjustifiable risk that an injury will occur, or when his or her action is grossly heedless of consequences."); 21 Am.Jur.2d *Criminal Law* § 138 (2d ed. 1998) ("Recklessness requires that an actor consciously disregard a substantial and unjustifiable risk."). We see no reason why this general definition of "recklessness" should not apply to felony weapons offenses.

By contrast, the *Bolsinger* line of cases expressly limits its definition of "recklessness" to the unique context of reckless driving, which involves criminal negligence concepts. *See* Minn.Stat. §§ 169.11, 169.13

(2006) (current statutes dealing with criminal negligence and reckless driving); *State v. Meany*, 262 Minn. 491, 495–96, 115 N.W.2d 247, 251 (1962) ("The crime of *criminal negligence* is defined in Minn. St. 169.11 * * *. The meanings of the terms 'reckless' and 'grossly negligent,' *as used in this statute*, are exhaustively reviewed in *State v. Bolsinger* * * *." (emphasis added)); *Bolsinger*, 221 Minn. at 157, 21 N.W.2d at 484 ("In order to apply § 169.11 * * *, we must first determine what it means. * * * The meaning of the word 'reckless,' *so far as it relates to driving*, is found in § 169.13." (emphasis added)). We find no indication that the legislature intended to apply a reckless driving standard to a wholly separate regulatory scheme. Accordingly, we adopt the *Cole* definition and hold that for purposes of Minn.Stat. § 609.66, subd. 1a(a)(3), one acts recklessly by creating a substantial and unjustifiable risk that one is aware of and disregards.

## II.

Having clarified that "recklessly" as used in Minn.Stat. § 609.66, subd. 1a(a)(3), requires the creation of a substantial and unjustifiable risk that the actor is aware of and disregards, it remains for us to determine whether the act creating that risk must be the intentional act of discharge or whether other acts can also constitute reckless discharge. Any crime, including reckless crimes, requires some voluntary act. *See* 1 Torcia, *supra*, § 25. It is not clear from Minn.Stat. § 609.66, subd. 1a(a)(3), whether that act must be the act of discharge or whether any act in connection with the discharge of a firearm evincing a conscious disregard of a substantial and unjustifiable risk can suffice. In arguing that an intent requirement should be read into the statute, *Engle* cites dicta in *State v. Richardson*, 670 N.W.2d 267, 283 (Minn.2003).[1]

The court of appeals relied upon the provision in Minn.Stat. § 645.16 that statutes should be construed to give effect to every provision. *Engle*, 731 N.W.2d at 862. The court reasoned that reading an intent component into subdivision 1a(a)(3) would render subdivision 1a(a)(2) superfluous, because intentional discharge in a reckless manner within a municipality necessarily falls within the ambit of intentional discharge in a manner that endangers another's safety. *Id.* Although much conduct would fall under both statutes, one could arguably be reckless in violation of subdivision 1a(a)(3) without endangering another in violation of subdivision 1a(a)(2).

It is significant, however, that subdivision 1a(a)(2), which existed in its current form when 1a(a)(3) was added in 1993, explicitly includes an intent requirement. *See* Act of May 20, 1993, ch. 326, art. 1, § 15, 1993 Minn. Laws 1974, 1986. This fact strongly suggests that the legislature deliberately decided against using the same "intentionally discharges" language in the new section. Had the legislature wanted subdivision 1a(a)(3) to mean "intentionally discharges a firearm in a reckless manner within a municipality," it could have mirrored the existing language in subdivision 1a(a)(2).[2]

---

1. In *Richardson*, the appellant argued that the jury should have received an instruction on Minn.Stat. § 609.66, subd. 1a(a)(3), as a lesser-included offense. 670 N.W.2d at 283. In rejecting appellant's argument, we stated, citing to the CRIMJIG, that "[r]eckless discharge of a firearm within a municipality requires proof that the defendant intentionally discharged a weapon in a municipality in a manner that the defendant should have known created an unreasonable risk of harm to others." *Id.*

2. Indeed, several states have statutes that delineate distinct mental state requirements for the act of firearm discharge and for the result.

Engle argues that *not* reading an intent component into subdivision 1a(a)(3) leads to an absurd result, namely that it "would render any licensed, trained individual (including law enforcement officers), acting entirely in accordance with accepted procedures, subject to criminal prosecution and conviction for any unintentional firearm discharge caused by a reflexive response." This argument misleadingly suggests that rejecting Engle's proposed intent requirement would negate any mental state requirement. On the contrary, the statute requires on its face that the discharge be reckless. A reckless crime requires both intentional conduct and the creation of a risk. Mere reflex, where an actor had not taken voluntary actions creating a risk, could not in any event subject a person to penalty under the statute.

Moreover, the policy of the statute—protecting the community from death or injury by firearms—is best served by holding actors responsible for consciously disregarding risks of harm, whether they do so by intentionally pulling the trigger or *by another act that increases the likelihood that the gun will discharge accidentally, involuntarily, or reflexively.* In light of the absence of any language of intent in subdivision 1a(a)(3), the corresponding presence of the word "intentionally" in an adjacent and preexisting section, and the legislative policy of protecting the public from the irresponsible use of firearms, we conclude that a person need not intend the discharge. We disavow any dicta in *Richardson* that says otherwise. We hold that a person has the requisite mental state for Minn.Stat. § 609.66, subd. 1a(a)(3), if he commits a conscious or intentional act in connection with the discharge of a firearm

that creates a substantial and unjustifiable risk that he is aware of and disregards.

Although the district court correctly concluded that the State need not prove that Engle intentionally discharged his firearm, the court applied the model jury instruction definition of recklessness, requiring only that Engle knew or should have known of the unreasonable risk he created. Because we hold here that a higher standard is proper for purposes of Minn.Stat. § 609.66, subd. 1a(a)(3), we must remand for reconsideration based on the existing record in light of this opinion. On remand, the district court must determine whether Engle committed a conscious or intentional act, in connection with the discharge of a firearm, that created a substantial and unjustifiable risk that he was aware of and disregarded.

Remanded.

---

*E.g.,* Iowa Code § 724.30 (2007) (penalizing one who "intentionally discharges a firearm in a reckless manner").