*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1921**

State of Minnesota,
Respondent,

vs.

Michael Jamah Griffis,
Appellant.

**Filed August 24, 2015
Affirmed
Chutich, Judge**

Dakota County District Court
File No. 19HA-CR-13-49

Lori Swanson, Attorney General, St. Paul, Minnesota; and

James C. Backstrom, Dakota County Attorney, Jessica A. Bierwerth, Assistant County Attorney, Hastings, Minnesota (for respondent)

Carson J. Heefner, Heefner Nelson Law, P.A., St. Paul, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Chutich, Judge; and Reyes, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CHUTICH**, Judge

Appellant Michael Griffis fired a gun three times in self-defense during an argument with his brother at Griffis's home. On the third shot, Griffis hit his brother in the chest and his wife in the hand. Griffis challenges his conviction of reckless discharge

of a firearm. Because sufficient evidence supports the guilty verdict and because the district court did not err in concluding that Griffis was reckless in firing his gun, we affirm.

**FACTS**

On December 31, 2014, appellant Michael Griffis, his wife, and his brother celebrated New Year's Eve together. His brother had been recently released from prison and to comply with the terms of his release, he was living with Griffis and Griffis's wife at their home in Inver Grove Heights. Griffis, his brother, Griffis's wife, and another couple attended two house parties that night. The group was asked to leave the second house party early because Griffis and his brother got into a heated argument.

On the drive back to the Inver Grove Heights home, Griffis and his brother continued to argue. The argument escalated when the car pulled into the garage. Griffis's wife testified that his brother jumped out of the car and "was in [Griffis's] face, just continuing to try to provoke him." Griffis said that he was not going to fight his brother and went into the house. The brother followed him into the foyer. Griffis's wife told the brother to leave and asked Griffis to go into another room. The brother ignored the directive and kept yelling at Griffis. While Griffis's wife was standing between the two men in the foyer, Griffis's brother reached around her and "sucker-punched" Griffis in the face. Griffis's wife testified that Griffis froze and then turned around and retreated to his bedroom.

The brother continued to follow Griffis, yelling down the hallway that he was going to beat him up. At the same time, Griffis's wife had the brother by the arm and was trying to pull him back down the hallway.

When the brother reached Griffis's partially closed bedroom door, he kicked it open. Griffis was waiting in the "low and ready position" with a gun. Griffis testified that he had retrieved the gun from his closet because he was afraid of his brother. He also testified that he did not know if his brother had picked up a 9 millimeter handgun from the living room where they had looked at it before attending the parties.

When the brother kicked open the bedroom door, Griffis's wife was partially draped over him to prevent him from entering the bedroom. She testified that when the door to the bedroom was kicked open, she could see Griffis loading a gun. Griffis fired one shot near the base of a dresser to stop the brother's advance. Griffis's brother kept advancing, however, and Griffis shot again at waist level. The brother continued to advance, and Griffis shot a third time. The third bullet hit Griffis's wife's hand, passed through her hand, and struck the brother in the chest.

The state charged Griffis with one count of first-degree assault, two counts of second-degree assault, and one count of reckless discharge of a firearm within a municipality. Minn. Stat. §§ 609.221, subd. 1, .222, subd. 2, .66, subd. 1a(a)(3) (2014). Griffis opted for a bench trial. Before trial, the parties stipulated to the following three facts: (1) the incident occurred in Dakota County; (2) Griffis fired the gun; and (3) the bullets recovered from Griffis's room were fired from his gun.

The district court concluded that Griffis acted in self-defense and acquitted him of the assault charges. It convicted Griffis of recklessly discharging a firearm, however, because the district court concluded that he knew that his wife was present when he fired the gun and consciously disregarded the risk posed to her by doing so. Griffis appealed.

## D E C I S I O N

"When reviewing a claim of insufficient evidence, our inquiry is limited to whether the fact-finder could have reasonably concluded that the defendant was guilty beyond a reasonable doubt." *Gulbertson v. State*, 843 N.W.2d 240, 244-45 (Minn. 2014). "We view the evidence in the light most favorable to the verdict and assume[] that the fact finder believed the state's witnesses and disbelieved any contrary evidence." *Id.* at 245 (alteration in original) (quotation omitted). "This is especially true where resolution of the case depends on conflicting testimony, because weighing the credibility of witnesses is the exclusive function of the [fact finder]." *State v. Pieschke*, 295 N.W.2d 580, 584 (Minn. 1980).

Minnesota Statutes section 609.66, subdivision 1a(a)(3), prohibits a person from "recklessly discharg[ing] a firearm within a municipality." A person acts "recklessly" if he "consciously disregards a substantial and unjustifiable risk that the element of an offense exists or will result from his conduct." *State v. Cole*, 542 N.W.2d 43, 51 (Minn. 1996) (quotation omitted); *see also State v. Engle*, 743 N.W.2d 592, 594 (Minn. 2008) (applying the *Cole* definition of "reckless" to Minnesota Statutes section 609.66, subdivision 1a(a)(3)). A fact-finder in a reckless-discharge case must examine the totality of the circumstances surrounding the shooting and focus on what the defendant

4

"knew and did not know when he pulled the trigger." *State v. Kycia*, 665 N.W.2d 539, 544 (Minn. App. 2003).

Griffis first argues that the district court erred in convicting him of recklessly discharging a firearm because the record "is completely void of any evidence" to show that he knew his wife was in the doorway when he fired his gun. He contends that the shooting took place over a matter of seconds and that he could not possibly have noticed his wife standing behind his brother. After a careful review of the record, we disagree.

Sufficient evidence supports the district court's conclusion that Griffis recklessly discharged a firearm when he shot his wife. The district court viewed exhibits and heard testimony describing the location of each person during the time that Griffis fired the gun. Griffis's wife testified that she was at least "[p]artially" draped over Griffis's brother and that she saw Griffis loading his gun in the bedroom after the door was kicked open. That she was able to see Griffis before the shooting started suggests that he was able to see her as well. In addition, the injury to her hand demonstrates that at least *some* part of her was draped over Griffis's brother trying to hold him back when Griffis fired the gun for the third time. Finally, Griffis knew that his wife had been trying to break up the fight between him and his brother the entire night. She told Griffis's brother to "shut up" in the car ride home, she stood in between the men in the garage, and she was in between them when Griffis's brother punched him.

Given the totality of the circumstances here—the constant physical presence of Griffis's wife throughout the entire dispute, her testimony that she could see Griffis loading the gun and that she was partially draped over his brother, and the injury to her

5

hand—the district court reasonably concluded that Griffis knew his wife was present when he fired the gun.

Finally, at oral arguments, Griffis argued that the evidence was insufficient to convict him of reckless discharge of a firearm as a matter of law. Griffis appears to argue that because the district court found his actions in shooting at his brother to be justified under self-defense, shooting his wife cannot also be considered a reckless act. Griffis's brief did not raise this issue. But because his argument relates to whether, as a matter of law, the evidence was sufficient to convict him under section 609.66, subdivision 1a(a)(3), we will address it here.

Griffis's argument relies on the doctrine of transferred intent, which Minnesota recognizes. *State v. Hall*, 722 N.W.2d 472, 477 (Minn. 2006). Transferred intent "is the principle that a defendant may be convicted if it is proved he intended to injure one person but actually harmed another." *Id.* (quotation omitted). Courts have applied transferred intent in the context of self-defense to justify the accidental injury or killing of an innocent bystander. *See, e.g.*, *Holloman v. State*, 51 P.3d 214, 221-22 (Wyo. 2002) ("[I]f self-defense is justified against the intended victim and would excuse the assault or homicide of that victim, then the assault or homicide of the unintended victim is excused or justified, and no criminal conviction can be obtained.").

No Minnesota court has addressed the question of whether the firing of a gun, although justifiable as self-defense, can still be criminalized as a reckless act under section 609.66, subdivision 1a(a)(3). The general rule in most jurisdictions is that if a person acting in self-defense unintentionally injures or kills a third party, that person is

6

not guilty of homicide or assault and battery. *See, e.g.*, *Rogers v. State*, 994 So. 2d 792, 802 (Miss. Ct. App. 2008) ("[W]hen an accused, acting in necessary self-defense, intends to injure or kill the aggressor only, unintentionally injures an innocent bystander, that transferred intent does not apply because the law justifies the accused's actions towards the aggressor.").

But this general rule is not absolute, and courts have recognized that it will not apply if the person asserting self-defense has acted recklessly or negligently. *See People v. Morris*, 491 N.Y.S.2d 860, 862-63 (N.Y. App. Div. 1985) (stating that if a defendant's actions were justified as self-defense, he would not be criminally liable for injuries to an innocent third party, unless the injury to the bystander was caused by the defendant's reckless or negligent conduct); *People v. Jackson*, 212 N.W.2d 918, 919 (Mich. 1973) (concluding that the unintended killing of an innocent bystander is not murder if it was justified under self-defense, but noting that it may be manslaughter if the circumstances show that the defendant's conduct toward the bystander was reckless); *Ruffin v. State*, 268 A.2d 494, 497 (Md. Ct. Spec. App. 1970) ("We are of the opinion that even though appellant purportedly was acting in self-defense, his action in firing the weapon in a direction of the apartment building, where he had cause to believe that third parties were present, was so grossly negligent as to constitute criminal negligence.").

On the other hand, at least one court has held that a defendant's self-defense justification prevented the state from charging him with assault or reckless endangerment for shooting an innocent bystander. *See Commonwealth v. Fowlin*, 710 A.2d 1130, 1131-34 (Pa. 1998) (holding that a defendant, who had been ambushed and pepper-sprayed in

the face at a nightclub with over 200 people, could not be criminally liable of recklessly endangering another or aggravated assault when he fired his gun multiple times and injured an innocent bystander because he acted in self-defense).

Because the gravamen of our inquiry focuses on recklessness, we agree with the line of cases holding that a defendant who is justified in exercising self-defense can be criminally liable for reckless or negligent conduct that injures a third party. We therefore conclude that Griffis's right to assert self-defense does not excuse the recklessness of his actions in firing a gun three times and injuring his wife, an innocent bystander in the line of fire.

Our conclusion is further supported by the Model Penal Code and the Minnesota Supreme Court's definition of recklessness under *Cole*. The Model Penal Code— although not adopted or precedential in Minnesota—states that self-defense does not excuse reckless or negligent conduct that results in an injury to an innocent third party. *See* Model Penal Code § 3.09(3) (stating that when a person acts in justifiable self-defense but "recklessly or negligently injures or creates a risk of injury to innocent persons," then the self-defense justification "is unavailable in a prosecution for such recklessness or negligence towards innocent persons").

Moreover, in *Cole*, our supreme court held that "[t]he term 'reckless' refers to the risk created, not the mental intent which resulted in an act which produced fear or injury." 542 N.W.2d at 52. Because "reckless" refers to the risk created and not the intent of the actor, the doctrine of transferred intent cannot apply to Griffis's charge. And, as discussed above, sufficient evidence supports the district court's conclusion that

8

Griffis disregarded a substantial and unjustifiable risk to his wife—and therefore acted recklessly—when he fired the gun three times at his brother.

**Affirmed.**