*This opinion is nonprecedential except as provided by
Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A24-1092**

State of Minnesota,
Respondent,

vs.

Ahmed Farah Muhumed,
Appellant.

**Filed June 9, 2025
Affirmed
Larkin, Judge**

Scott County District Court
File No. 70-CR-23-10275

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Ronald Hocevar, Scott County Attorney, Elisabeth M. Johnson, Assistant County Attorney, Shakopee, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rebecca Ireland, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Larson, Judge; and Bentley, Judge.

**NONPRECEDENTIAL OPINION**

**LARKIN**, Judge

Appellant challenges his convictions of second-degree assault with a dangerous weapon and reckless discharge of a firearm within a municipality, arguing that the evidence at trial was insufficient to sustain the jury's guilty verdicts. We affirm.

## FACTS

In July 2023, respondent State of Minnesota charged appellant Ahmed Farah Muhumed with second-degree assault with a dangerous weapon and reckless discharge of a firearm within a municipality. The charges were tried to a jury.

Evidence at trial showed that in July 2023, MC was cooking pizza in his apartment. He heard a ruckus outside his apartment and went to investigate. He saw two individuals in a stairwell, Muhumed and BK. He offered them pizza, and they accepted. He brought them two pieces of pizza on a pan. Muhumed, who looked angry, took the pan with both pieces. MC was upset that Muhumed took both pieces because MC thought that BK might also be hungry. MC reached down, grabbed both slices of pizza, and smashed them with his hands. Muhumed threw the pizza pan against the wall, stood up, pulled out a gun, and chambered a round.

MC asked Muhumed if he was going to shoot him and then stated, "Shoot me, shoot me." Muhumed aimed the weapon at MC, and MC retreated down the stairs. After taking a few steps, MC turned around and "could see in [Muhumed's] eyes he was going to shoot." After seeing that Muhumed was aiming at him, MC leapt down the stairs. When MC was near the bottom of the stairs, he heard a gunshot. The bullet grazed the stairwell wall along which MC had retreated. MC called 911 and reported the offense.

Muhumed subsequently gave statements to the police and denied any knowledge of the confrontation or shooting that had occurred in the stairwell. However, when Muhumed testified at trial, he acknowledged his interaction with MC and BK in the common area of

MC's apartment building. Muhumed testified that he did not have a firearm and never shot at MC. Muhumed also testified that he heard a "bang" after leaving the apartment building.

The jury found Muhumed guilty of both offenses. The district court entered a judgment of conviction on each offense and sentenced Muhumed to 36 months in prison for the assault conviction.

Muhumed appeals.

**DECISION**

**I.**

Muhumed contends that the evidence was insufficient to support his assault conviction.

Muhumed was convicted of second-degree assault with a dangerous weapon under Minn. Stat. § 609.222, subd. 1 (2022), which provides, "Whoever assaults another with a dangerous weapon may be sentenced to imprisonment . . . ." Assault means either "an act done with intent to cause fear in another of immediate bodily harm or death" (assault-fear) or "the intentional infliction of or attempt to inflict bodily harm upon another" (assault-harm). Minn. Stat. § 609.02. subd. 10 (2022). Muhumed argues that the state failed to prove that he acted with "specific intent to cause fear of immediate bodily harm or death."

Intent reflects a person's state of mind and is generally proved circumstantially. *State v. Cooper*, 561 N.W.2d 175, 179 (Minn. 1997). Because there was no direct evidence of Muhumed's specific intent, we apply the circumstantial-evidence standard of review. *See State v. Al-Naseer*, 788 N.W.2d 469, 471 (Minn. 2010) (stating that "heightened

3

scrutiny applies to any disputed element of the conviction that is based on circumstantial evidence").

Under the circumstantial-evidence standard of review, we first determine the circumstances proved, disregarding evidence that is inconsistent with the verdict. *State v. Harris*, 895 N.W.2d 592, 600-01 (Minn. 2017). Next, we "determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis other than guilt." *Loving v. State*, 891 N.W.2d 638, 643 (Minn. 2017) (quotation omitted). We do not defer to the fact-finder's choice between reasonable inferences. *State v. Silvernail*, 831 N.W.2d 594, 599 (Minn. 2013). We will reverse a conviction based on circumstantial evidence only if there is a reasonable inference other than guilt. *Loving*, 891 N.W.2d at 643. However, a rational hypothesis of innocence cannot be based on mere speculation or conjecture—it must be supported by evidence in the record. *Al-Naseer*, 788 N.W.2d at 480; *State v. Tscheu*, 758 N.W.2d 849, 858 (Minn. 2008).

In this case, the jury's guilty verdict was based on assault-fear. Thus, the issue presented is whether Muhumed had the requisite intent to cause fear in another of immediate bodily harm or death. "With intent to" in the context of assault-fear "means that the actor either has a purpose to do the thing or cause the result specified or believes that the act, if successful, will cause that result." Minn. Stat. § 609.02, subd. 9(4) (2022). Assault-fear is a specific-intent crime. *State v. Fleck*, 810 N.W.2d 303, 309 (Minn. 2012). The state therefore had to prove beyond a reasonable doubt that Muhumed acted with the "intent to cause a particular result," that is, to cause MC to fear immediate bodily harm or

4

death. *Id.* at 308 (quotation omitted). Circumstantial evidence of intent includes inferences drawn "from the defendant's conduct, the character of the assault, and the events occurring before and after the crime." *In re Welfare of T.N.Y.*, 632 N.W.2d 765, 769 (Minn. App. 2001).

The following circumstances were proved at trial. Muhumed was angry and had a confrontation with MC in the common stairwell of MC's apartment building. Muhumed pulled out a gun, chambered a round, aimed the gun at MC as MC retreated down the stairs, and fired the weapon as MC leapt away. The bullet grazed the stairwell wall where MC had retreated. These circumstances are consistent with guilt. *See Cooper*, 561 N.W.2d at 179 (stating that a fact-finder may infer that the defendant intended the natural and probable consequences of his actions); *see also State v. Hough*, 585 N.W.2d 393, 397 (Minn. 1998) ("When an assailant fires numerous shots from a semiautomatic weapon into a home, it may be inferred that the assailant intends to cause fear of immediate bodily harm or death to those within the home.").

Muhumed argues that the circumstances proved permit the alternative reasonable inference that he "was displeased with MC's rather erratic behavior over Muhumed taking a bite of the pizza that was given to him and merely wanted to end the interaction and get away from MC." This is not a rational or reasonable alternative hypothesis of innocence. As the state posits: If Muhumed "was 'merely' pointing [the] gun to get away from [MC], why did he think pointing a gun would make [MC] leave him alone?" The answer is obvious: Muhumed knew that pointing the gun at MC would cause MC to fear being shot

5

and to therefore end the interaction. Essentially, Muhumed's alternative hypothesis is not one of innocence; it is a concession of guilt.

In sum, a fact-finder may infer that a person intends the natural and probable consequences of his acts. *Cooper*, 561 N.W.2d at 179. On this record, the only reasonable inference that can be drawn from the circumstances proved is that Muhumed intended to cause MC fear of immediate bodily harm or death.

## II.

Muhumed contends that the evidence was insufficient to support his conviction of reckless discharge of a firearm.

To convict Muhumed of that offense, the state was required to prove that he "recklessly discharge[d] a firearm within a municipality." Minn. Stat. § 609.66, subd. 1a(a)(3) (2022). "Recklessly" is not defined by statute but is generally considered to be "a level of culpability more serious than ordinary negligence and less serious than specific intent to harm." *State v. Engle*, 743 N.W.2d 592, 594 (Minn. 2008). Reckless discharge of a firearm in a municipality "does not require proof of an intentional discharge, but rather requires a conscious or intentional act in connection with the discharge of a firearm that creates a substantial and unjustifiable risk that the actor is aware of and disregards." *Id.* at 592. Muhumed argues that the state failed to prove that he discharged the firearm recklessly.

Once again, because Muhumed's intent was proved with circumstantial evidence, we apply a heightened standard of review, relying on the circumstances proved as set forth in section I of this opinion.

6

Muhumed argues that "nothing in the circumstances proved rules out the rational inference that the firearm suddenly and unexpectedly discharged or that it was negligently but not recklessly handled or fired, or that some reflexive action caused it to fire." Muhumed further argues that "no witness testified about how the gun was being handled when it subsequently went off." But instead of pointing to evidence in the record to show a reasonable hypothesis of innocence, Muhumed relies on the absence of evidence.

"[T]he absence of evidence in the record regarding a certain circumstance does not constitute a circumstance proved." *State v. German*, 929 N.W.2d 466, 473-74 (Minn. App. 2019). In *German*, we stated that "any claims about the presence or absence of DNA or fingerprint evidence would be speculative" because no evidence regarding DNA or fingerprints was offered at trial. *Id.* at 473. Muhumed's hypothesis of innocence is similarly speculative in that it relies on the absence of evidence and not a circumstance proved. We will not reverse a conviction based on such conjecture; a defendant must "point to evidence in the record that is consistent with a rational theory other than guilt." *Tscheu*, 758 N.W.2d at 858.

Moreover, even if the gun misfired or was fired accidentally, Muhumed's acts of pulling out the gun, chambering a round, and pointing and aiming the gun at MC in the common stairwell of an apartment building were sufficient to prove a reckless discharge because those intentional acts created a readily apparent, substantial, and unjustifiable risk that the weapon could discharge. *See Engle*, 743 N.W.2d at 596 (construing the same statutory language at issue here and concluding that "the policy of the statute—protecting the community from death or injury by firearms—is best served by holding actors

7

responsible for consciously disregarding risks of harm, whether they do so by intentionally pulling the trigger or by another act that increases the likelihood that the gun will discharge accidentally, involuntarily, or reflexively").

**Affirmed.**